[Civ. No. 47691. Second Dist., Div. Three. Feb. 25, 1976.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
JOSEPH W. ABRAHMS, Real Party in Interest.

760

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan, Philip J. McCarthy and Jay J. Becker, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Richard S. Buckley, Public Defender, John M. Moore, Chief Deputy Public Defender, Harold E. Shabo, Stephen M. Hogg and Martin Stein, Deputy Public Defenders, for Real Party in Interest.

**OPINION**

**POTTER, J.**—By information, Joseph W. Abrahms (hereinafter "defendant") was charged with violation of Penal Code section 476a (uttering

insufficient funds checks). A preliminary hearing was held on July 10, 1975. On November 17, 1975, defendant's 1538.5 motion to suppress was heard and granted. On defendant's motion, trial was set for December 16, 1975. On December 4, 1975, the People filed in the superior court a "Notice of Intention to File Petition for Writ of Mandate in the California Court of Appeal." On December 16, 1975, on motion of the People, the case was continued to December 26, 1975. On December 17, 1975, the People filed their "Petition for Writ of Mandate Pursuant to Penal Code Section 1538.5." On December 26, 1975, the People announced they were not ready to proceed to trial, stating: "It is our position that under Section 1538.5(*l*) of the Penal Code that the proceedings in this matter are stayed pending the resolution of the matter in the Appellate Court."

The trial court, under the assumption that the 1538.5 motion was granted on November 13, dismissed the action, ruling that the People's writ had not been filed within the 30-day time limit of section 1538.5, subdivision (o). On December 29, 1975, the People moved that the court correct its order dismissing the action. The court continued the matter to January 15, 1976.

On December 30, 1975, this court issued an alternative writ of mandate and stay order requiring the superior court to "vacate the order of November 17, 1975, granting the motion of defendant Abrahms to suppress evidence . . ." or show cause "why a peremptory writ of mandate should not issue." At that time this court had not been informed of the December 26, 1975, dismissal. On January 15, 1976, the People filed a "Supplement to Petition for Writ of Mandate Pursuant to Penal Code Section 1538.5," seeking additional relief, i.e., that this "Court direct to Superior Court to annul its order of December 26, 1975, dismissing this case." On January 21, 1976, we issued a "Supplemental Alternative Writ of Mandate," requiring the trial court to "vacate the order of December 26, 1975, dismissing the action . . ." or show cause "why a peremptory writ of mandate . . . should not issue." Both matters are currently before this court.

*Facts*

The 1538.5 motion was submitted on the basis of the preliminary hearing transcript, certain documentary evidence admitted by the magistrate, and the sworn testimony of the defendant taken at the time of the Penal Code section 1538.5 hearing. The subject of the motion was certain bank records relating to defendant's account, a signature card,

the May 1974 statement, and a statement indicating the daily balance from opening to closing. The People initiated the proceeding by stipulating there was no arrest or search warrant. They further stipulated that it was "the People's case on the motion, the burden having shifted to the People . . . ." The evidence before the court established that on June 17, 1974, Mark Drexler agreed to sell a 1971 Pontiac to defendant for $1,500. Defendant paid Drexler by "personalized check." No agreement was made to hold the check for a period of time. The next day Drexler attempted to deposit the check but his bank, after calling another bank, refused to negotiate the check. Drexler was later repaid in full by defendant's wife and his attorney.

On or about July 13, 1974, defendant approached David Friedrich, an Alpha Beta Store manager, seeking to cash a $100 check. Friedrich initialed the check, signifying his approval. The check was cashed, and later sent back by the bank unpaid.

Jean Vietor, an assistant manager-operations officer with the Bank of America, testified that at "someone's request" she had reviewed defendant's bank account. She prepared People's exhibit 1, a statement indicating the daily balance of defendant's account from opening to closing. Defendant had no credit arrangement, "Ready Reserve," with the bank. His signature card indicated that he alone was authorized to draw checks against the account. On the basis of information contained in defendant's May account statement, Ms. Vietor determined defendant's June 17 balance to be $4.58 and his June 18 balance to be $1,210.07. On June 18 defendant had deposited $1,350.

Defendant testified that on July 29, 1974, his account was closed, and as of that time no money was owed to the bank.

*Issues*

Defendant contends that the People's failure to comply with the jurisdictional requirements of Penal Code section 1538.5, subdivision (o), renders this court without jurisdiction to consider the merits of the People's petition. The People contend that the lower court "acted illegally and beyond its jurisdiction" in dismissing the case. The People further contend that the trial court erred in suppressing the bank records because, first, defendant made no showing that the bank records were seized by governmental authority; second, the bank, as victim of Penal Code section 476a violations, can consent to such searches; and, third,

the bank's "significant interest" in preventing "not sufficient funds" transactions by their depositors allows it to consent to such searches.

*This Court Has Jurisdiction to Consider the Merits of the People's Petition*

Defendant concedes that the trial court incorrectly determined that more than 30 days had passed from the granting of defendant's 1538.5 motion to the filing of the People's petition for writ of mandate. He contends, however, that the "dismissal of the action was still correct and supportable since the People had not filed their Notice of Intention to Seek a Writ of Mandate within the jurisdictional time period provided for by Penal Code section 1538.5(o)."

This contention is based upon certain language in *People* v. *Superior Court (Sandoval)* 29 Cal.App.3d 135 [105 Cal.Rptr. 268]. In *Sandoval,* defendants were charged with certain Health and Safety Code violations. On June 16, 1972, an information was filed in the superior court. On August 14, the date originally set for trial, defendant's motion to suppress evidence pursuant to Penal Code section 1538.5 was granted. The court reassigned the case for trial to the master calendar "to trail" on August 21. On that date it was set "to trail" on September 11. On that date it was continued to a later date. On September 13, the People filed a petition for writ of mandate. The court, construing section 1538.5, subdivision (o), held that the People's petition was filed too late. Section 1538.5, subdivision (o), provides: "Within 30 days after a defendant's motion is granted at a special hearing in the superior court, the people may file a petition for writ of mandate or prohibition, seeking appellate review of the ruling regarding the search or seizure motion. If the trial of a criminal case is set for a date which is less than 30 days from the granting of a defendant's motion at a special hearing in the superior court, the people, if they have not filed such a petition and wish to preserve their right to file such a petition, shall file in the superior court on or before the trial date or within 10 days after the special hearing, whichever occurs last, a notice of intention to file such a petition and shall serve a copy of the notice upon the defendant."

The court in *Sandoval* stated (29 Cal.App.3d at p. 138):

"Although this section seems at first to be confusing, an analysis of it shows what it means:

"1. Where the date set for trial is more than 30 days away from the date on which the motion to suppress is granted, the People have 30 days from the date of the granting to file a petition.

"2. Where the date set for trial is less than 30 days away from the date on which the motion to suppress is granted, the People may file a petition before the date set for trial.

"3. Where the date set for trial is less than 30 days away from the date on which the motion to suppress is granted, and the People wish to preserve their right to file a petition within the 30-day limit, *they must file a notice of their intention to so file within 10 days from the date of the granting;* or if the date set for trial is less than 10 days from the date of the granting, they must file a notice of their intention to file on or before the date set for the trial.

"Applying the section to this case the situation is as follows: The motion to suppress was granted August 14. The case was set for trial for August 21 (seven days away) 'to trail.' This meant that the case would go to trial on that date unless there was no criminal department available in which event it would be tried as soon as a department would become available. The People's remedy here was either within seven days to apply to the appellate court for a writ, or to give a notice of intention to file such petition. The People failed to do either, as they waited until the 30th day after the granting of the motion to file this petition. Had the case been tried on the date set, August 21, or within a few days thereafter as is the practice where a case 'trails,' it would have been too late for the People to have applied for a writ." (Italics added.)

■  Thus, defendant asserts: "In the case at bench, since the suppression hearing was held on November 17, 1975 and trial was set *only* 29 days away on December 16, 1975, in order to comply with the jurisdictional requirements of 1538.5(o) in attempting to preserve their right to file the writ within the 30 day limit, the People had to file their Notice of Intention to seek a writ by *no later than November 28, 1975* (November 27, 1975 being a court holiday) rather than filing that notice on December 4, 1975. Under *People* v. *Superior Court (Sandoval), supra,* even though the trial herein was eventually continued past December 16, 1976, [*sic*] since the People did not file their Notice of Intention to Seek a Writ by November 28, 1975, the People's petition must be dismissed. It was not filed within the jurisdictional time period required by the statute."

The above emphasized language in *Sandoval* appears to support defendant's contention. However, *Sandoval* later states: "It is true that Penal Code section 1538.5 provides that where a motion to suppress is granted and the case is set for trial within 30 days thereafter, the People, if they desire 30 days in which to file for the writ, must file a notice of intention to apply for such writ *'on or before the trial date or within 10 days after the special hearing, whichever occurs last.' . . ."* (*Id.*) (Italics added.)

We believe this later language accurately states the effect of Penal Code section 1538.5, subdivision (o). Accordingly, we find the petition timely.

In so holding, we refuse to read "whichever occurs last" out of the statute and require that a notice of intention be filed within 10 days or less of the 1538.5 hearing. Such a construction would be directly contrary to the statutory language authorizing such a notice of intention "on or before the trial date." In any event, we note that any such language in *Sandoval* is merely dicta, since no notice of intention had in fact been filed. If a notice of intention had been filed prior to the initial trial date, the People would have preserved their right to file a petition within 30 days.

Thus, in this case, the People filed their notice of intention 17 days after the 1538.5 hearing but prior to the initial date set for trial. The petition for mandate was filed on the 30th day after the 1538.5 hearing. Such actions comply with the requirements of section 1538.5, subdivision (o). In sum, the People properly petitioned this court for writ of mandate, and the writ is properly before our court.

*The Trial Court's Dismissal Prior to the Granting of the Alternative Writ, But After Notice of Intention, Was in Excess of Its Jurisdiction*

■ After defendant's November 17, 1975, motion to suppress evidence had been granted, the People filed a notice of intention to file petition for writ of mandate on December 4, and filed a petition for writ of mandate on December 17. The court, pursuant to Penal Code section 1385, dismissed the case on December 26, 1975. On December 30, 1975, we issued an alternative writ ordering the court to vacate its November 17 order or show cause. On January 6, 1976, defendant's counsel, the Los Angeles County Public Defender, in a letter filed with this court, requested: "[S]ince the underlying criminal action had been dismissed before the order of this court was issued that this court's prior order be

vacated and set aside and that the writ proceedings be dismissed as moot. It is submitted that the People have an adequate remedy at law by which they may contest the orders of the trial court."

On January 15, 1976, the People, in their supplement to petition for writ of mandate, asserted that the court acted "beyond its jurisdiction" in dismissing the case when all further proceedings were stayed by virtue of the provisions in Penal Code section 1538.5, subdivision (*l*).

Section 1538.5, subdivision (*l*), provides in pertinent part: "If the defendant's motion to return property or suppress evidence is granted, the trial of a criminal case shall be stayed to a specified date pending the termination in the appellate courts of this state of the proceedings provided for in this section, Section 1238, or Section 1466 and, except upon stipulation of the parties, pending the time for the initiation of such proceedings. Upon the termination of such proceedings, the defendant shall be brought to trial as provided by Section 1382, and subject to the provisions of Section 1382, whenever the people have sought and been denied appellate review pursuant to subdivision (o), the defendant shall be entitled to have the action dismissed if he is not brought to trial within 30 days of the date of the order which is the last denial of the petition. Nothing contained in this subdivision shall prohibit a court, at the same time as it rules upon the search and seizure motion, from dismissing a case pursuant to Section 1385 when such dismissal is upon the court's own motion and is based upon an order at the special hearing granting defendant's motion to return property or suppress evidence. . . ."

The People rely on *People* v. *Superior Court (MacLachlin)* 271 Cal.App.2d 338 [76 Cal.Rptr. 712], for a proper construction of this section. In *MacLachlin*, the lower court granted defendant's 1538.5 motion and simultaneously dismissed the case pursuant to Penal Code section 995. The court noted (271 Cal.App.2d at p. 346): "[O]ne of the underlying purposes of the 1967 enactment of section 1538.5, Penal Code, was to afford the People effective appellate relief from an adverse ruling on the admissibility of evidence obtained by search and seizure. . . ."

The court found that a dismissal under section 995 would preclude such review because: "[I]f the People seek appellate review of the ruling on the motion to suppress by petition for writ of mandate as provided in section 1538.5 subdivision (o), Penal Code, even if the appellate court entertains the petition and orders issuance of the writ directing the superior court to vacate its order suppressing the evidence and make a

different order denying defendant's motion to dismiss, the People have gained an empty victory for the order cannot be executed because there is no case pending before the superior court the same previously having been dismissed by it on defendant's motion under section 995, Penal Code; and if in addition the People appeal from the order granting defendant's motion to dismiss under section 995, they cannot prevail in their efforts to have the case reinstated in the superior court so that the writ may be given full effect because the sole evidence against defendant having been removed from the case by the order suppressing the same there is not reasonable cause to hold him for trial. . . ." (271 Cal.App.2d at pp. 345-346.)

The People assert: ". . . The policy allowing the People to review the results of 1538.5 hearings is as equally frustrated where a court can, as in the instant case, hear a motion to dismiss several weeks after the 1538.5 hearing was held as where a 995 motion can be heard."

In contrast, defendant urges: "In the instant case, since the People have an adequate remedy at law still available [an appeal from the dismissal pursuant to Penal Code section 1238, subdivision (a)(7)], the holding of the Court in *MacLachlin* supports Real Party in Interest's position rather than being supportive of the People's contention."

We disagree with defendant's assertion. Providing an opportunity for expeditious appellate review is a basic purpose of the statute. As a corollary to the above, section 1538.5 provides a "comprehensive plan, prescribing a single method of raising the issue in particular proceedings and at particular stages of the proceedings." (Witkin, Cal. Evidence (2d ed. 1974 Supp.) § 71A, p. 32.) Though the trial court's order herein will not preclude further review, it is contra to this comprehensive plan, thereby unduly burdening the court system and frustrating the intent of the Legislature.

Section 1538.5, subdivision (*l*), specifically states that when defendant's motion to suppress is granted, trial shall be stayed "to a specified date pending the termination in the appellate courts of this state of the proceedings provided for in this section . . . ." The court, however, may "*at the same time as it rules upon the search and seizure motion*" dismiss the case pursuant to section 1385 "when such dismissal is upon the court's own motion and is based upon an order at the special hearing granting defendant's motion to return property or suppress evidence. . . ." The court's power to dismiss pursuant to section 1385 is thus limited to the time of ruling on the 1538.5 motion.

This is consistent with section 1538.5, subdivision (j), which provides in part: "If defendant's motion is granted at a special hearing in the superior court . . . the people may seek appellate review as provided in subdivision (o), unless the court prior to the time such review is sought has dismissed the case pursuant to Section 1385. . . ." Thus, if the court, at the same time it grants defendant's motion to suppress, dismisses the case pursuant to section 1385, the People may not file a writ, but must appeal pursuant to Penal Code section 1238, subdivision (a)(7). If the court grants defendant's motion, but at that time does not dismiss pursuant to section 1385, the People may, by way of the expedited writ procedure set forth in section 1538.5, subdivision (o), seek appellate review, and the case is stayed pending the termination of such proceedings. In this way, a streamlined, orderly method of appellate review is facilitated. Accordingly, we find the lower court to have acted in excess of its jurisdiction in dismissing the action.

## The Trial Court Erred in
## Suppressing the Bank Records

1.  *The Evidence Establishes That the Bank Records Were Seized by a Governmental Authority*

The subject of the 1538.5 motion was certain bank records. Jean Vietor testified that she had prepared these records at "someone's request." The People stipulated that there was no arrest or search warrant. They further stipulated that it was "the People's case on the motion, the burden having shifted to the People." The People then argued this search was lawful within an exception recognized in *Burrows v. Superior Court,* 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590]. For the first time, on appeal, the People assert that there was no evidence that "police officers or other governmental agents" requested the search; hence, that defendant failed to establish a prima facie case of illegal search and seizure. This contention is without merit. "[T]he defendant makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification. . . ." (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].)

Here, the People's stipulations acknowledged that defendant had made a prima facie case of illegal search and seizure. *People* v. *Carson,* 4 Cal.App.3d 782 [84 Cal.Rptr. 699], relied on by the People, does not require a contrary conclusion. In *Carson,* defendant's 1538.5 motion was

not supported by a stipulation to use the transcript of the preliminary hearing as evidence. Accordingly, there was no stipulation or testimony before the court concerning the absence or existence of a warrant. In fact, there was no testimony whatsoever before the court. The prosecutor, ordered to put on his case, refused, noting that the burden was upon defendant to establish a prima facie case of illegality. The appellate court found that "[a]bsent any evidence whatsoever before the court" (4 Cal.App.3d at p. 787), defendant was not entitled to have the motion granted. In the instant case, there was evidence before the court establishing the absence of a warrant, and the People acknowledged the burden had shifted. This was in effect a stipulation that there was an exercise of governmental authority. In any event, the People did not raise this point below. They are precluded from raising it for the first time on appeal. (*People* v. *Superior Court (Simon)* 7 Cal.3d 186, 198 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Miller,* 7 Cal.3d 219, 227 [101 Cal.Rptr. 860, 496 P.2d 1228]; *Mestas* v. *Superior Court,* 7 Cal.3d 537, 542 [102 Cal.Rptr. 729, 498 P.2d 977].)

2. *Since the Drawee Bank Is Not Neutral With Respect to Penal Code Section 476a Offenses It Has a Right to Consent to Governmental Examination of Relevant Bank Records*

■ In *Burrows* v. *Superior Court, supra,* 13 Cal.3d 238, the Supreme Court held that a depositor has "a reasonable expectation that the bank would maintain the confidentiality of those papers which originated with him in check form and of the bank statements into which a record of those same checks had been transformed pursuant to internal bank practice." (13 Cal.3d at p. 243.) Hence, "the voluntary relinquishment of such records by the bank at the request of the police does not constitute a valid consent by this [depositor] . . ." (13 Cal.3d at p. 245), and any such records obtained were "acquired as the result of an illegal search and seizure." (*Id.*) The court noted an exception to the above rule—such bank consent would be valid, "if the bank is not neutral, as for example where it is itself a victim of the defendant's suspected wrongdoing . . . ." (*Id.*) The People contend that the drawee bank is not "neutral" with respect to section 476a[1] violations. We agree.

[1]Section 476a of the Penal Code reads in pertinent part: "(a) Any person who for himself or as the agent or representative of another or as an officer of a corporation, willfully, with intent to defraud, makes or draws or utters or delivers any check, or draft or order upon any bank or depositary, or person, or firm, or corporation, for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with said bank or

A violation of section 476a of the Penal Code is committed when the defendant "willfully, with intent to defraud, makes or draws or utters or delivers any check . . . upon any bank . . . for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer . . . has not sufficient funds in, or credit with said bank . . . for the payment of such check, draft or order and all other checks, drafts or orders upon such funds then outstanding . . . ." In other words, Penal Code section 476a is violated by the giving of a bad check with the necessary knowledge and intent, even though defendant gains nothing by it and no one loses anything as a result. (*People* v. *Zimmer,* 23 Cal.App.2d 581, 585 [73 P.2d 923]; 1 Witkin, Cal. Crimes (1963) § 480, p. 441.) It is not necessary to show that the check was presented at the drawee bank and dishonored. (*People* v. *Cortze,* 108 Cal.App. 111, 114 [290 P. 1083]; *People* v. *Williams,* 69 Cal.App. 169, 173 [230 P. 667]; *People* v. *Khan,* 41 Cal.App. 393, 395 [182 P. 803].) While an intent to defraud is the gist of the offense (*People* v. *Poyet,* 6 Cal.3d 530, 534 [99 Cal.Rptr. 758, 492 P.2d 1150]), this intent does not refer to the bank, but refers to the person to whom the check was delivered. (*People* v. *Wilbur,* 33 Cal.App. 511, 514 [165 P. 729].)

In *People* v. *Johnson,* 53 Cal.App.3d 394 [125 Cal.Rptr. 725], the court found the commission of a Penal Code section 476a violation placed the bank in a position of potential liability for the amount of the check (see Cal. U. Com. Code, §§ 4301, 4302), thereby rendering the bank "not neutral" and able to consent to a search of relevant bank records. Defendant contends *Johnson* is not controlling, first, because such holding was merely dicta, since the court determined the seizure of defendant's bank records was under a validly issued search warrant, and, second, because the case is factually distinguishable, since in that case the defendant's 1538.5 motion was denied, and defendant's account had been closed one year before the check in question was drawn and presented. Thus, defendant interprets *Johnson* as holding merely that the trial court finding that the bank was not neutral was based upon substantial evidence. In the instant case, defendant asserts, the finder of fact, in granting the 1538.5 motion, found the bank to be neutral based upon substantial evidence, i.e., that defendant did not intend to defraud the bank.

---

depositary, or person, or firm, or corporation, for the payment of such check, draft or order and all other checks, drafts or orders upon such funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than 14 years."

A reading of the record below[2] establishes that the trial court made no such finding. Instead it erroneously concluded that a bank is "not neutral" only when it is a "victim," and that in order to be a "victim," it must suffer monetary damages.

A section 476a violation may be committed even if the drawee bank dishonors the check and the payee also suffers no ultimate loss. In such cases, however, the bank is placed in a position of potential loss should it honor the check. This potential makes the utterance of any such check an attempt to defraud the bank which, though unsuccessful, renders the bank non-neutral, as the victim of the attempt. The bank's neutrality does not, and should not, depend on the success of defendant's enterprise. Accordingly, we hold the drawee bank to be a "potential victim" in "not sufficient funds" cases. As such, the bank is "non-neutral" within the meaning of *Burrows,* and is able to consent to a search of relevant customer bank records.

## Disposition

From the foregoing, it appears that the order dismissing the action should be vacated and that defendant's motion to suppress should be denied. The supplemental alternative writ and the alternative writ shall, therefore, be discharged, and a peremptory writ of mandate shall issue directing the respondent court to vacate its order of December 26, 1975, dismissing the action and to vacate its order of November 17, 1975, granting defendant's motion to suppress evidence, and to make a new order denying said motion.

Ford, P. J., and Allport, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied April 22, 1976.

---

[2]The court stated its finding the bank was not a victim was based upon the fact that "these two checks were dishonored on their face."