[Crim. No. 5844. Fifth Dist. Jan. 25, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
VERNON DUANE HOLE et al., Defendants and Appellants.

432

COUNSEL

Melvin M. Belli, Daniel U. Smith, Eric Liberman and Harold Selan for Defendants and Appellants.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Gary A. Binkerd, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROWN (G. A.), P. J.**—Appellants, Vernon Duane Hole and William Todd Capps, were jointly convicted by a jury of arson of a structure (Pen. Code, § 451, subd. (c)) and of causing property damage in excess of $100,000 in value (Pen. Code, § 12022.6, subd. (b)).

The issues on appeal are: whether evidence of the motive of a third party to burn the market was admissible against appellants and whether the bank records of the market and its owner were obtained and admitted into evidence in violation of the "California Right to Financial Privacy Act" (Gov. Code, §§ 7460-7493).

Though there is no substantial evidence issue, a brief statement of the circumstances is helpful in resolving the issues before the court.

Robert Goodrich was the owner of the West Side Market in Taft, California, subject to a large purchase money mortgage. Appellant Hole was Goodrich's nephew, and appellant Capps had worked for Goodrich.

On the night of February 6, 1981, the market and its contents burned. Earlier that day Goodrich went to the store and took $800 from the safe, leaving a slip in return. Appellants Hole and Capps accompanied him to the store. They left the market in Goodrich's Oldsmobile Cutlass.

When the employees left the market that evening, they locked all the exterior doors and turned on the burglar alarm. Around 11 p.m., the burglar alarm sounded.

The alarm was heard by sheriff's officers seated in their parked patrol vehicle about one block east of the market. They started toward the market. Enroute the officers saw a 1980 Oldsmobile Cutlass driving north bound in an alleyway adjacent to the market, heading away from the market.

The officers followed the vehicle and stopped it about two blocks away. Appellant Hole was driving the car, and appellant Capps was slumped down in the passenger seat. Hole told the officers they (Hole and Capps) were enroute from Los Angeles to Bakersfield.[1]

The officers heard over their radio that the market was on fire.

Appellants were arrested. Taken from Hole were, inter alia, a set of keys, a credit card and a box of wooden matches. Inside the car was a gas can and a small caliber pistol. The vehicle was secured until arson investigators arrived.

An arson investigator took charge of the vehicle. The gas can smelled of gasoline when it was opened. On the rear seat were payroll records from the market. Also found in the vehicle was a Thrifty bag, containing, among other items, a Cricket lighter and a receipt dated "6 Feb." reflecting purchases of items priced identically to the lighter and gas can, items which were stocked and sold by Thrifty.

In the glove compartment of the vehicle was a set of keys. Also found inside the trunk was a briefcase with papers relating to the market. The keys fit the burglar alarm lock and all other locks to the market.

---

[1]Taft is approximately 20 miles off the direct route.

Fire department personnel walked around the building trying to get into the burning market, but all doors were locked. They eventually broke down a door. It took 20 minutes for the fire department to gain access to the building.

Two experts testified for the prosecution that the fire was intentionally set at four points with the use of accelerants.

Numerous witnesses testified the market was in poor financial condition. Bank records showed several thousand dollars of "not sufficient fund" checks. The accounts of major suppliers of merchandise were past due; many had put the market on a cash basis, and others had stopped supplying the market.

The evidence showed that the market had lost approximately two-thirds of its business, the stock was low, and employees were forced to cash their checks at the market. There was a substantial civil judgment against Goodrich upon which execution had been levied.

Over a period of time Goodrich had removed approximately $9,000 from the cash drawer, leaving slips representing the amount.

One month before the fire Goodrich had procured a policy of fire insurance naming himself and his wife as beneficiaries in the total sum of $610,000.

### DISCUSSION

While conceding that evidence of motive to commit a crime is generally admissible against the person so accused (Evid. Code, § 1101, subd. (b)), appellants argue where a person is not a party to the pending prosecution, evidence of a nonparty's motive is inadmissible because it is irrelevant and its impact would be too prejudicial under Evidence Code section 352.[2] Grounding their objection on that principle, appellants argue that the court prejudicially erred in admitting evidence of Goodrich's motive to burn the market.

There is a general principle of law that evidence of a third party's motive is inadmissible where it merely provides a possible ground for suspicion against that person. For such evidence to be admissible there must be substantial evidence directly connecting that person with the commission of that crime. The purpose of the rule is to place reasonable limitations on the trial of collateral issues. (*People* v. *Green* (1980) 27 Cal.3d 1, 22 [164 Cal.Rptr. 1, 609 P.2d 468].)

---

[2]Evidence Code section 352 reads: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The cases appellants cite are factually in tune with this general principle. *People* v. *Green, supra,* 27 Cal.3d 1, 22-23, found no error in the trial court's exclusion of evidence, which pointed to a theory that a witness may have killed the victim, because substantial evidence did not connect the witness with the murder. *People* v. *Whitney* (1978) 76 Cal.App.3d 863, 869-870 [143 Cal.Rptr. 301], a case involving conviction for throwing a substance at a vehicle (Veh. Code, § 23110, subd. (b)), affirmed the trial court's exclusion of the defendant's evidence which he claimed suggested the theory that the victim may have fired the shot which ricocheted back at him. The court reasoned there was little possibility the theorized act occurred in light of testimony that no evidence of bullet marks on defendant's car was seen at the time of the incident and that the victim stated his gun was locked away. The court based its ruling on Evidence Code section 352, concluding the evidence would have been unduly prejudicial to the People. (See also *People* v. *Reeder* (1978) 82 Cal.App.3d 543, 552-553 [147 Cal.Rptr. 275].)

The instant case is not analogous to the preceding cases. Our research has failed to turn up a case directly in point. The cases cited above involved situations where, by linking the third party to the crime, the defendant was attempting to absolve himself of complicity in the crime. Here, by contrast, the evidence of Goodrich's motive makes the evidence of appellants' complicity stronger. In essence, the uncharged conspirator's motive is being imputed to appellants.

The evidence was clearly relevant. (Evid. Code, §§ 350, 210.) It established a motive on the part of Robert Goodrich to burn the market. This motive, when coupled with the other circumstantial evidence tying appellants to Goodrich, becomes relevant in appellants' trial. The combination had a tendency in reason to prove appellants shared this motive and that they burned the market at Goodrich's request.

The evidence linking appellants to Goodrich is substantial. Hole was Goodrich's nephew, and Capps had worked for Goodrich. Appellants were with Goodrich the day of the fire and drove Goodrich's car. Found in the car was a set of keys which fit the locks to the market. The fact the fire department had to break into the building, together with the short distance appellants were from the market traveling away from the market, and other circumstances, give rise to a reasonable inference that the keys were used by appellants a very short time before they were stopped. This evidence is sufficient to support the jury's conclusion that Goodrich recruited appellants to torch the building. Thus Goodrich's motive was derivatively appellants' motive.

Appellants argue, assuming relevancy, that the evidence was prejudicial. Of course it was. Like all relevant evidence in a prosecution's case, the evidence

was prejudicial to the extent it demonstrated appellants' guilt. However, this is not the type of prejudice within the purview of Evidence Code section 352.

Lastly, appellants contend the records of the market and Goodrich at the bank were introduced in violation of the California Right to Financial Privacy Act.

It appears that based upon knowledge acquired from sources other than bank records, the district attorney had filed an accusatory pleading against Goodrich for passing NSF checks. (Pen. Code, § 476a.) His preliminary hearing was set on May 5, 1981.

Prior to April 29, 1981, a judicial subpoena duces tecum had been issued and served on the bank, directing the bank to bring the records to Goodrich's preliminary hearing. On April 29 the deputy district attorney and an investigator visited the bank to assist in weeding out of the voluminous records the records actually needed to comply with the subpoena. The district attorney's investigator inspected the records on that date.

Appellants challenge the legality of the subpoena on the grounds that (1) it was issued without an affidavit attached as required by Code of Civil Procedure section 1985,[3] and (2) the subpoena duces tecum was not served upon Mr. Goodrich pursuant to the requirements of Government Code section 7476, subdivisions (a) and (c). Appellants conclude that the evidence of the financial records should have been excluded pursuant to the provisions of Government Code section 7489.[4] However, appellants overlook the provisions of subdivision (d) of Government Code section 7470 and subdivision (c) of Government Code section 7471. These sections provide:

"Except as provided in Section 7480,[5] this section is not intended to preclude a state or local law enforcement agency from initiating contact with a financial institution if there is reason to believe that the institution is a victim of a crime. After such contact by a law enforcement agency, if the financial institution believes it is a victim of a crime, it may, in its discretion, disclose rele-

---

[3]The lack of an affidavit was not raised in the court below and there is no legally cognizable record evidence supporting the allegation. Therefore, we will not consider the allegation that there was a lack of an affidavit.

[4]Government Code section 7489 provides: "Evidence obtained in violation of this chapter is inadmissible in any proceeding except a proceeding to enforce the provisions of this article."

[5]The exception referred to in Government Code section 7480 makes it mandatory that the bank disclose the records where the law enforcement personnel certify "in writing that a crime report has been filed which involves the alleged fraudulent use of drafts, checks or other orders drawn upon any bank or credit union . . . ." (This section has been amended to include savings and loan associations. (Stats. 1981, ch. 74, § 1, p. 230, eff. June 21, 1981.))

Under the procedure outlined in sections 7470, subdivision (d), and 7471, subdivision (c), the disclosure is discretionary with the bank.

vant financial records pursuant to subdivision (c) of Section 7471." (Gov. Code, § 7470, subd. (d).)

"This section shall not preclude a financial institution, in its discretion, from initiating contact with, and thereafter communicating with and disclosing customer financial records to, appropriate state or local agencies concerning suspected violation of any law." (Gov. Code, § 7471, subd. (c).)

The so-called "bank as victim" exception was recognized by the Supreme Court in *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590]. That case said: "[I]f the bank is not neutral, as for example where it is itself a victim of the defendant's suspected wrongdoing, the depositor's right of privacy will not prevail." (*Id.*, p. 245; see also *People* v. *Blair* (1979) 25 Cal.3d 640, 652 [159 Cal.Rptr. 818, 602 P.2d 738]; *People* v. *Muchmore* (1979) 92 Cal.App.3d 32, 37 [154 Cal.Rptr. 488].)

Where a defendant attempts to pass a check in violation of Penal Code section 476a, the drawee bank is a "victim of the crime" regardless of whether of not it has suffered financial loss. (*People* v. *Superior Court (Abrahms)* (1976) 55 Cal.App.3d 759, 770-772 [127 Cal.Rptr. 672].)

■ Thus, the subpoena process provided for in Government Code section 7476, relied upon by appellants, is not in all events required. Accordingly, the disclosure of the records to the district attorney in this instance was authorized under the "bank as victim" exception notwithstanding any defects in the subpoena.

■ Assuming, arguendo, that the admission of the bank records was error, the records were cumulative and nonprejudicial. The error would not violate federal constitutional standards (*United States* v. *Miller* (1976) 425 U.S. 435 [48 L.Ed.2d 71, 96 S.Ct. 1619]); and where the bank is a victim, looking at the records does not violate a depositor's California constitutional right to privacy (*Burrows, supra,* 13 Cal.3d 238). If there was a violation, it would be a violation of statutory procedures only. When state standards have been violated, the state is free to apply its own harmless error rule. (*Cooper* v. *California* (1967) 386 U.S. 58, 62 [17 L.Ed.2d 730, 734, 87 S.Ct. 788].) In this instance the *Watson* standard would apply (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]).

At least 16 other witnesses testified to Goodrich's passing bad checks. These witnesses were not located as a result of the district attorney's looking at the bank records. The district attorney stated that the records were checked only after they had investigated and determined from other people that Goodrich had written NSF checks. Under the circumstances, it is not reasonably probable that

a result more favorable to appellants would have been reached in the absence of the error. *(People* v. *Watson, supra.)*

The People also vigorously argue that the truth-in-evidence provisions of Proposition 8 (Cal. Const., art. I, § 28, subd. (d)), effective June 9, 1982, affirmatively eliminated appellants' bank record argument. The People cite two reasons: (1) the Supreme Court of the United States has held that a bank customer has no expectation of privacy protected by the Fourth Amendment with regard to bank records *(United States* v. *Miller, supra,* 425 U.S. 435), and (2) the United States does not recognize the peculiar and unique California vicarious exclusionary rule. (See *Alderman* v. *United States* (1969) 394 U.S. 165 [22 L.Ed. 2d 176, 89 S.Ct. 961]; *United Stated* v. *Salvucci* (1980) 448 U.S. 83 [65 L.Ed. 2d 619, 100 S.Ct. 2547]; *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed. 2d 387, 99 S.Ct. 421].)

Since we have decided there was no error in admitting the evidence, and if there was, it was nonprejudicial, we need not reach or resolve the applicability of Proposition 8.

The judgment is affirmed.

Andreen, J., and Stanton, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 23, 1983.

---

*Assigned by the Chairperson of the Judicial Council.