[Civ. No. 6071.   Fourth Dist.   Apr. 18, 1960.]

HARRY KHASIGIAN et al., Respondents, v. ARKEL ARAKELIAN, Appellant.

John D. Chinello and Gasper H. Magarian for Appellant.

Ralph Moradian for Respondents.

GRIFFIN, P. J.—Plaintiffs, cross-defendants and respondents Harry Khasigian, Amos Khasigian and Julia Karagozian, brothers and sister, brought this action against defendant, cross-complainant and appellant Arkel Arakelian to establish a constructive trust in certain property of defendant, for an accounting and specific performance requiring defendant to convey to each of plaintiffs a one-fourth interest in certain described real and personal property plus the value of rents and profits therefrom.

Defendant denied generally these allegations of the complaint and by way of cross-complaint asked that defendant's title thereto be quieted against the plaintiffs. Defendant appealed from a decree in plaintiffs' favor.

Certain facts are not in dispute. The mother of the parties to this action, Arshaloos Arakelian (formerly Khasigian) died intestate July 27, 1955. She had been married to Movses Arakelian for over 35 years. Defendant Arkel Arakelian, the only child of that marriage, was born November 11, 1921. At the time of the mother's death, title to her city home (Lots 5 and 6) stood in her name as well as a bank account in the amount of $565.01. Title to the 20-acre ranch property (Lot 38) stood in the name of Mr. and Mrs. Arakelian as joint tenants.

Defendant Arkel Arakelian was appointed administrator of his mother's estate. During the administration of her estate, her husband Movses died on December 7, 1955. His will was executed in 1952, naming defendant executor of his estate. Defendant was the only living beneficiary thereunder. The mother was named a residuary beneficiary.

The record does indicate, as alleged in the complaint, that

some time during the administration of the mother's estate, then being handled by Attorney Renge, plaintiffs made some claim to their mother's estate, believing that the real property held in her name as well as the bank account were her separate property and accordingly it would not all pass to their step-father as community property; that they may have some claim to defendant's father's estate since their mother was a residuary beneficiary under his will; that they may have some right to be appointed administrator of the mother's estate and also that defendant may have frustrated their stepfather in his plan to leave the estate equally to the three sons. A conference of plaintiffs and defendant regarding these respective claims was called in Attorney Renge's office, from which ultimately culminated what plaintiffs claim was a settlement of all their previous differences. Plaintiffs claim that defendant orally agreed with them that, in consideration of their waiver of any claim to the mother's estate, right of appointment as administrator and any questions as to the propriety of defendant's father's will, defendant would proceed with the administration of the mother's estate as being community property, have all property distributed to his father's estate, which would in turn be distributed to him, and he would then divide the proceeds of his father's estate, which included the joint tenancy ranch property, between plaintiffs and himself, one-fourth to each.

Distribution was accordingly made to defendant from his father's estate. It is conceded that he refused to turn over to plaintiffs three-fourths of the property received.

The trial court, in effect, found this agreement to have been made and accordingly ordered distribution of the entire property, plus earnings.

The main question on this appeal is the sufficiency of the evidence to support this finding and decree. Volumes of testimony were taken on this subject. Suffice it to say, without setting forth the testimony, all three plaintiffs, including defendant's attorney for the estate, testified substantially to these facts. Defendant half-heartedly denied them. As an example, in reply to questions, defendant testified as follows:

"Q. I just asked you if at any time you said prior to the death of your father that you would see to it that your half-brothers and half-sister would get their share of the estate either from their stepmother or their stepfather. A. Well, that was a part of some of our conversations.

"*.    *    *    *    *    *    *    *    *    *    *    *

"Q. Well, a moment ago you said that you did make some comment giving them a share of the estate, they had insisted that—— A. I am trying to say that I didn't know whether they had a share or not.

"Q. But you were willing to see that they got an equal share in the estate whether they had it coming or not, isn't that correct? A. Well, that was the general part of our conversations.

"Q. So that is correct, isn't it? A. I guess I would have to say yes, wouldn't I?

"  .   .   .   .   .   .   .   .   .   .   .

"Q. All right. When you went to Renge's office there was conversation between you and Harry also about the brothers, your step half-brothers and sister sharing in the estate too, was there not? A. Well, there was, all the time, I mean that conversation was going on all the time.

"Q. Between you and them? A. Yes.

"Q. All right. You had told them, had you not, at that point that you would take over the administration of the estate, they wouldn't have to worry about getting their share of the estate? A. Well, I don't know if I said anything like that.

"Q. Well, you could have said something like that? A. Well, it might have been something like that.

.   .   .   .   .   .   .   .   .   .   .   .

"A. Well, only part I said about it was (in Renge's office) well, I don't even know if I said that. I thought that Julie should share too, if there was going to be any share for anyone, she should have a share too.

.   .   .   .   .   .   .   .   .   .   .   .

"A. Well I don't know (that I said that).

.   .   .   .   .   .   .   .   .   .   .   .

"A. . . . might have been. I don't remember.

.   .   .   .   .   .   .   .   .   .   .   .

"Q. Well, in order to make it quite clear at the time before you left Mr. Renge's office, hadn't you told Mr. Renge and all present that as far as you were concerned the property would be and could be divided equally. A. I told them if it was legal.

"Q. In other words, if it could be legally done? A. Yes."

The attorney for the estate, Mr. Renge, when informed by defendant that defendant refused to go through with the agreement as thus agreed upon, withdrew as defendant's attorney for the estate and told defendant he would no longer represent him or the estate under the circumstances, and

recommended that he obtain another attorney. Defendant did so, and the estate matter was closed by the other attorney whom defendant failed to inform that an agreement in respect to distribution of the entire proceeds, one-fourth to each, had been made. Demand was made by plaintiffs for their respective shares, to no avail. This action ensued, and defendant obtained another attorney to represent him in the defense of the action. Without further discussion of the evidence, we conclude that there was ample evidence to support the finding of the trial court.

Defendant next claims the court erred in making an additional finding that Mrs. Arakelian left separate property at the time of her death, since her estate was distributed to her husband as community property, without contest on the part of plaintiffs, and this decree became final.

Plaintiffs alleged in their complaint that this described property was the separate property of their mother. It did stand in her name and the ordinary presumption would apply that it was her separate property. (Civ. Code, § 164.) It was upon this basis that plaintiffs claimed an interest therein and it would support the claim that plaintiffs waived some right or claimed right as consideration for the agreement alleged. We conclude that such finding was not necessary to determine whether plaintiffs did, in fact, have a legitimate claim to this property. They apparently believed, in good faith, that they did, and they were so advised by one of their attorneys. ██ It has been definitely held in *Union Collection Co.* v. *Buckman,* 150 Cal. 159, 163 [88 P. 708, 119 Am.St. Rep. 164, 11 Ann.Cas. 609, 9 L.R.A. N.S. 568]:

". . . the compromise of a doubtful claim asserted and maintained in good faith constitutes a sufficient consideration for a new promise, even though it may ultimately be found that the claimant could not have prevailed. This is true whether the claim be in suit or not. . . ."

See also *Hamilton* v. *Oakland School District,* 219 Cal. 322, 329 [26 P.2d 296]; *Bennett* v. *Bennett,* 219 Cal. 153 [25 P.2d 426]; *First National Bank* v. *Thompson,* 212 Cal. 388, 405 [298 P. 808].

██ Defendant next challenges the trial court's finding that plaintiffs placed full trust and confidence in defendant and fully relied on his representation that he would make the transfers to plaintiffs as promised by him, claiming the relationship between brothers is not presumed to be confidential. Citing *Estate of Miller,* 143 Cal.App.2d 544 [299 P.2d 1005].

It does not appear that the trial court relied upon any presumption of such confidential relationship between plaintiffs and defendant. The evidence supports the finding without the aid of any presumption. No prejudicial error is indicated.

Lastly, defendant rightfully complains, and plaintiffs so concede in their brief, that an error was made in a paragraph of the decree which should be corrected:

". . . that defendant and all persons claiming through or under him (other than the plaintiffs), be and they are hereby forever debarred, restrained and enjoined from asserting any right, title or interest in or to any of the above described property or any part thereof after the said ten day period hereinabove specified."

Under this wording, it made no exception of defendant's declared one-fourth interest in the property. The decree should be and is modified to read:

". . . that defendant and all persons claiming through or under him (other than the plaintiffs) be and they are hereby forever debarred, restrained and enjoined from asserting any right, title or interest in or to any of the above described property or any part thereof [except an undivided one-fourth interest therein owned by defendant,] after the said ten day period hereinabove specified."

Decree affirmed as modified. Plaintiffs to recover costs on appeal.

Shepard, J., and Coughlin, J., concurred.