[Crim. No. 8434.    Second Dist., Div. Three.    Nov. 4, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN BELL AIKEN, Defendant and Appellant.

Jack K. Berman and Cyril Viadro for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Woodruff J. Deem, District Attorney, Herbert L. Ashby, Assistant District Attorney, and Edwin M. Osborne, Chief Criminal Deputy District Attorney, for Plaintiff and Respondent.

FILES, J.—Defendant was convicted of grand theft of an automobile and appeals from the judgment.* ▮ The sole question is whether there was a sufficient transfer of property to support the conviction upon the theory of theft by false pretenses.

The evidence was sufficient to allow the jury to find that the transaction occurred as follows:

On November 19, 1961, an automobile dealer named Marcel Sap agreed to sell defendant a 1959 Thunderbird in exchange for a 1953 Plymouth, a 1960 Ford, a 1956 Oldsmobile and $166.54 in cash. Defendant delivered the Plymouth and the cash. The purchase order was marked ''Paid in full by check November 19, 1961.'' Defendant promised to go to San Francisco, where the Ford and the Oldsmobile were located, and deliver them to Sap the following day. He represented that the Ford and Oldsmobile were in ''front-line'' condition. Actually, defendant had no intention of delivering either vehicle to Sap. He had recently sold the Oldsmobile to someone else, and the Ford had been so badly damaged by fire that it had little value. At defendant's request Sap delivered the Thunderbird to defendant's friend Gloria, who was to be the new owner.

Sap did not possess a certificate of ownership for the Thunderbird, but he did have an application for a duplicate certificate, signed by his predecessor owner. Before taking possession of the Thunderbird, Gloria signed her name on this application as the new registered owner. Gloria took possession and Sap did not see the Thunderbird again until he repossessed it weeks later.

On November 20 Sap mailed to the Department of Motor Vehicles a written notice in conformity with Vehicle Code, section 5901, stating that he had sold the Thunderbird to Gloria. Sap did not send the ownership certificate application to the Department of Motor Vehicles until November 30. By this time he was suspicious because the Ford and the Oldsmobile had not been delivered, so he inserted his name as legal owner, in addition to Gloria as registered owner.

The trial court instructed the jury upon the elements of theft by false pretenses but, for reasons not disclosed in the record, refused to instruct on theft by trick and device. ▮ False pretenses, as distinguished from theft by trick

---

*The notice of appeal also refers to the order denying the motion for a new trial, which is a nonappealable order. (Pen Code, § 1237.)

and device, require a transfer of title. (See *People* v. *Ashley,* 42 Cal.2d 246, 258 [267 P.2d 271].) In *People* v. *Nor Woods,* 37 Cal.2d 584, 586 [233 P.2d 897], the Supreme Court approved submitting the case to the jury on both theories, and concluded that ''since by the verdict the jury determined that he did fraudulently appropriate the property, it is immaterial whether or not they agreed as to the technical pigeonhole into which the theft fell.'' ▮▮▮ Since only one theory was offered the jury in the present case, defendant contends that the distinction is a controlling one. Our conclusion is that, assuming the classification to be crucial, the evidence here fits the pigeonhole.

Defendant points to the testimony of Sap that, ''If Tuesday noon they [the Ford and the Oldsmobile] weren't frontline ready, as he explained, that they were subject to a reappraisal.'' Sap also testified that ''he [defendant] and Gloria were both told by myself that if he didn't like the Thunderbird on the drive to San Francisco, that he could drive it back the next day and we would undo the deal, and by the same token, that his cars were subject to seeing them.''

This statement was considered by the jury along with Sap's other testimony that when he turned over possession of the Thunderbird to Gloria on November 19 he intended to sell it and intended that she then become the owner. This statement of intention was corroborated by the written purchase order and the fact that Gloria signed the application for an ownership certificate and that Sap notified the department on the following business day in conformity with Vehicle Code, section 5901.

The jury could reasonably have concluded that Sap had believed and relied upon defendant's representations as to the condition of the Oldsmobile and the Ford, and had made a present sale of the Thunderbird on that basis. The fact that Sap realized that he had some recourse against defendant if the trade-ins were not as represented does not compel a finding that no present sale was intended on November 19.

If the sale of the Thunderbird be construed as a sale ''on approval,''this would not prevent a transfer of title. The effect would be only to postpone the effective date until the next day, when the purchaser retained the car beyond the time limit for returning it. (Civ. Code, §§ 1738, 1739.)

If it be assumed that on November 19 Sap had the undisclosed intention of holding the signed ownership certificate application as his protection until the Ford and the Oldsmo-

bile were received, this would amount to no more than a device to preserve a security interest in the Thunderbird.

Defendant refers to Vehicle Code, section 5600, which provides that "No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective" until the transferor has delivered the certificate of ownership to the transferee or has delivered or mailed the transfer documents to the department.

The illusory comfort which defendant finds in section 5600 disappears when the transfer and registration provisions of the Vehicle Code are read and construed as a whole and in the light of the legislative purpose. In *Stoddart* v. *Peirce*, 53 Cal.2d 105 [346 P.2d 774], the Supreme Court, in passing upon the effect of a transaction in which the seller had failed to place a date on the transfer endorsement, said (p. 116): "Another example of language which should not be construed in a strict or literal sense is found in section 186 [now Veh. Code, § 5600]. It provides that 'No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until the parties ...' shall have performed one or more of several alternative acts. Insofar as the legal title of the party failing to comply with the statutory requirement, or his liability to a third person is concerned there is little doubt that the quoted language means just what it says. But this does not mean that no equitable title passes from a defaulting transferor or to a defaulting transferee, or that as to either of them the transfer is entirely ineffective. Such an interpretation would defeat the primary purpose of the statute and relieve a defaulting transferee of liability to a person injured in an accident involving the vehicle which he has failed to register. It would also defeat the obvious legislative intent to hold that, as between the parties, the law recognized no transfer of a financial interest merely because one or more of the parties failed to comply with the registration statutes."

In *Venne* v. *Standard Accident Ins. Co.*, 171 Cal.App.2d 242 [340 P.2d 30], Celeste Venne sold her car to her brother Raymond but failed to deliver the endorsed certificate of ownership. Raymond became involved in an accident. Celeste carried liability insurance which covered anyone who used the vehicle with her permission. The question was whether Raymond was operating the vehicle as owner or as a permis-

sive user. The court concluded (p. 246) : ''While we are of the opinion that 178, subdivision (a)(1) [now Veh. Code, § 5602] compliance is not sufficient to transfer title under California's motor vehicle registration laws, it seems equally clear that, as between Celeste and Raymond, there was an actual sale of the vehicle and therefore it would be unrealistic to hold that Raymond was a permissive user of the automobile involved in the accidnet.''

In the light of these authorities, it cannot be said that Gloria was a mere bailee or permissive user when she drove the Thunderbird away on November 19. As between the parties, a property interest passed.

Other jurisdictions have found no difficulty in deciding that theft by false pretenses has been committed where the thief took property under a conditional sales contract and the victim retained a legal title to secure the unpaid balance of the purchase price. (*Whitmore* v. *State,* 238 Wis. 79 [298 N.W. 194] ; *Chappell* v. *State,* 216 Ind. 666 [25 N.E.2d 999].)

In *People* v. *Jones,* 36 Cal.2d 373 [224 P.2d 353], the theft consisted of inducing the victims to enter into partnership with the defendant. The Supreme Court rejected defendant's argument that by becoming members of the partnership the victims retained such an interest in the fund as to preclude a finding of theft by false pretenses.

Our attention has not been called to any authority requiring that in order to support a conviction for theft by false pretenses the title acquired by the fraud be perfect or complete.

The appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 30, 1963.