[Crim. No. 38279. Second Dist., Div. Two. Apr. 7, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
IRVING H. NORTH, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Therene Powell, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, John R. Gorey and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ROTH, P. J.—On February 26, 1979, appellant opened a checking account at a branch of Security Pacific National Bank with a deposit of $150. Another deposit of $1,000 was made the following March 20. The account was then inactive until the latter part of May the same year, though at some time during the period appellant applied for and was granted a check guarantee card and a line of credit in the amount of $1,000. That line of credit gave appellant overdraft protection and the right to use bank credit cards up to a limit of the specified amount over the balance in his account. Charges or checks for more than the $1,000 credit line were outside the credit agreement.

Appellant's check guarantee card notified merchants that the bank would pay any of his checks up to the amount of $100 so long as the card number was written on the back of the check, even though there might not be enough money on deposit or remaining as unused credit to provide coverage.

The card did not extend limitless credit to appellant, however, and the bank could invalidate it by placing its number on a warning bulletin to merchants and asking that it be picked up, after which the bank was not obliged to accept checks drawn on the account. Between May 25 and June 26, 1979, one deposit of $857.64 was made to appellant's ac-

count and two checks, one for $190 and one for $3, were drawn on it, such that the ending balance for that period was $1,999. Between June 26 and July 27, 1979, one other check for $1,700 reduced the balance to $298.07. There was no activity in the account between July 27 and August 27, 1979.

Two checks drawn on a Cleveland bank were deposited in appellant's account on September 14, 1979. One check was for $4,000; the other for $4,500.

During the period between August 27 and September 19, 1979, 76 checks totaling $7,436.13 were drawn on appellant's account, 73 of which were for $100 each. The ending balance on September 19, 1979, was then shown to be $1,461.09.

The unusual activity in checks caused the bank to order a special statement on September 19, 1979, and to try, unsuccessfully, to retrieve appellant's check guarantee card even though he apparently had a positive balance in his account. To this end, the bank wrote a letter to appellant on September 19, 1979, stating that it was terminating appellant's ready reserve account, bank credit cards, and check guarantee card. It did not, however, put appellant's check guarantee card on a warning bulletin because appellant did not appear to be overdrawn.

The two checks drawn on the Cleveland bank were rejected and returned unpaid on September 20, 1979, and, as became clear, appellant never had enough money in the Cleveland account to cover either instrument.

Another 48 checks totaling $4,569.06, 43 of which were for $100 each, were drawn on appellant's account between September 19 and September 26, 1979.

Between September 26 and October 26, 1979, one check for $100 was drawn on appellant's account and the account was charged back $4,000 for one of the checks returned from the Cleveland bank. The ending balance then appeared as minus $7,222.47. There was no activity in the account between October 26 and November 12, 1979.

Between November 12 and November 16, 1979, appellant's account was charged back $4,500 for the other check returned by the Cleveland

bank, so that the ending balance on the latter date was minus $11,722.47.

Fifty-four checks totaling $5,180, 48 of which were for $100 each, were drawn on appellant's account between November 16 and November 27, 1979. No activity occurred between November 27 and December 27, 1979. On the latter date, the balance in the account after certain service charge adjustments was minus $16,888.92.

Based upon the foregoing, appellant was charged by information with two counts of issuing checks without sufficient funds in violation of Penal Code section 476a, subdivision (a) (counts I and III) and two counts of grand theft in violation of Penal Code section 487, subdivision 1 (counts II and IV). A jury found him guilty on all four counts.[1]

On the appeal it is contended that:

1. The evidence was insufficient as a matter of law to establish appellant's intent to defraud the supermarkets which cashed the checks in question.

2. If the evidence was sufficient to go to the jury on the issue of intent to defraud, the trial court should have granted appellant's request for delivery of CALJIC No. 15.28.

3. Because there was a transfer of both possession and title in the proceeds of the cashed checks, the court erred in instructing the jury on larceny by trick or device while refusing to instruct on obtaining property by false pretenses.

■ Respecting the first of these, it is clear to us, and not disputed by appellant, that in issuing some 160 $100 checks and obtaining the proceeds thereof, when under no circumstances could those instruments, viewed as a totality, have been covered by a positive bank account balance, appellant, by virtue of the further facts recited herein, intended to defraud someone. The suggestion, however, is that violation of Penal Code section 476a is predicated upon an intent to defraud the person to whom the check was delivered rather than an intent to defraud the bank upon which the check is drawn (see *People v. Superior Court*

---

[1]A fifth count involving bribery in violation of Penal Code section 67, which was the subject of a mistrial and dismissed in the interests of justice, does not concern us here.

*(Abrahms)* (1976) 55 Cal.App.3d 759, 771 [127 Cal.Rptr. 672]), and that, owing to the fact the evidence would support the conclusion appellant expected the former to be paid on account of the bank's agreement under the terms of its guarantee card, no case adequately was made out that appellant's conduct was at odds with the statute.

The answer to this contention, in our view, lies in the fact that, while it is true that the reported instances of matters of this kind have expressed the principle that "An intent to defraud the person to whom the check was delivered is an essential element of the offense charged" (see *People* v. *Haines* (1959) 176 Cal.App.2d 41, 45 [1 Cal.Rptr. 41]; *People* v. *Lane* (1956) 144 Cal.App.2d 87, 89 [300 P.2d 321]; *People* v. *Griffith* (1953) 120 Cal.App.2d 873, 881 [262 P.2d 355]), it has also been correctly observed that the "gist of the offense" is the intent to defraud. (See *People* v. *Haines, supra,* 176 Cal.App.2d 41, 45.) Such being the case, we are persuaded the argument of respondents that the earlier decisions, having been made prior to the development of the check guarantee card, are not to be understood as creating a means whereby, under facts like those present here, an accused may avoid the proscriptions of Penal Code section 476a, and that the scope of that provision is sufficiently wide to encompass appellant's behavior, since, in all events, that behavior contemplated a fraud either on the bank or the recipients of the checks, depending only upon the manner in which the bank's indemnification agreement, to which appellant was not a party, might operate. Accordingly, we conclude appellant's initial assignment of error is not well taken.

■ The same is true respecting the claim the trial court should have instructed the jury in terms of CALJIC No. 15.28, which provides in part that an intent to defraud is lacking where it is shown the maker of the check had "good reason to believe and honestly does believe that it will be paid upon presentment for payment," since, upon the record here, there was no substantial evidence to support a finding to that effect. (See *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

■ Appellant's final contention has the complexion of merit but does not withstand analysis. Over his objection, the jury was instructed on larceny by trick or device even though obtaining property by false pretenses is a more accurate description of the crime committed.

The necessity of corroboration distinguishes false pretenses from trick and device and adds to the burden of proof the People must carry. Corroboration was present at bench in the form of the bank check guarantee card. In *People* v. *Kagan* (1968) 264 Cal.App.2d 648 [70 Cal.Rptr. 732], (pet. for hg. and rehg. den.) the jury was instructed on larceny by trick and device, embezzlement and false pretenses. The court, discussing the distinction between said types of theft said at page 658: "As to the California theft statute (§ 484), however, the cases all hold that a judgment of conviction must be affirmed if there is sufficient evidence to support a theft conviction on *any* theory. (See, e.g., *People* v. *Woolson*, 181 Cal.App.2d 657, 666 . . .; *People* v. *McManus*, 180 Cal.App. 2d 10, 31-32 . . .; *People* v. *Ashley*, 42 Cal.2d 246, 258 . . . .) As stated in *Ashley, supra*, 'Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an "unlawful taking" has been proved.'" (Fn. omitted.)

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied May 7, 1982, and appellant's petition for a hearing by the Supreme Court was denied June 3, 1982. Bird, C. J., was of the opinion that the petition should be granted.