[No. A062295. First Dist., Div. Five. Jan. 19, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL GREGORY COUNTS, Defendant and Appellant.

[No. A062402. First Dist., Div. Five. Jan. 19, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MARSHALL EDWARD MIKELS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of sections A.2., A.3., and B.

## COUNSEL

Corey, Luzaich, Gemello, Manos & Pliska, Edward W. Pliska and Renee L. Berenson for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann K. Jensen and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PETERSON, P. J.**—Appellant Marshall Edward Mikels was convicted on numerous charges of grand theft and the making of false financial statements; appellant Michael Gregory Counts was convicted on charges of receiving stolen property. All the charges against both appellants arose from multiple thefts of lumber from lumber companies. Appellants raise numerous contentions of error.

We conclude there was no prejudicial error and affirm the judgments of conviction. In the published portion of this opinion, we hold that Mikels could properly be convicted of theft, on a theory of theft by false pretenses, despite the fact a security interest was retained in the stolen property by the victim; and that the abstruse technical question of whether this crime might also have been theft on a theory of larceny by trick could not result in reversal of the theft conviction.

### I. FACTS AND PROCEDURAL HISTORY

Appellants were construction contractors who joined together in acts designed to steal lumber from lumber companies.

In early February 1992, Mikels was in deep financial difficulties, and county records showed he owed more than $800,000 to creditors. He filed a petition for writ of mandate and request for stay with this court (Division Five) on February 18, 1992, seeking relief from creditors; we denied the petition the same day (*Mikels* v. *Superior Court* (Feb. 18, 1992) A056562 [nonpub. opn.]). Two days later, he filed for federal bankruptcy protection.

In the days immediately before these events, Mikels ordered large amounts of lumber on credit from a number of different lumber companies, supposedly for use on a Caltrans job which in fact did not exist. Instead,

once the lumber was delivered to the supposed jobsite, Mikels moved the lumber and "sold" it for 50 cents on the dollar to his friend and partner, Counts. Counts hid the stolen goods in his lumberyard, and the identifying tags or markings which would have allowed it to be easily traced by the lumber companies were sanded off or removed. Counts planned to use the lumber to build fences for his own company, Peninsula Fence. Eventually, one of the lumber companies became suspicious and investigated; Mikels said he had used up the lumber on various jobs; but the company's representatives saw their lumber sitting in Counts's lumberyard, together with a lot of other lumber stolen from other companies by the same methods. The company contacted the authorities.

Most of the stolen lumber was recovered, and charges were filed against appellants. Mikels was charged with four counts of grand theft by false pretenses. Mikels was also charged with three counts of making a false financial statement. Counts was charged with three instances of receiving stolen property, in violation of Penal Code[1] section 496.

After a jury trial at which the evidence summarized above was adduced, the jury returned verdicts which convicted the appellants as charged, except the jury found that one of the charged thefts as to Mikels was in fact only an attempted theft. The trial court sentenced both appellants to probation. They timely appealed, and we ordered the appeals consolidated.

II. DISCUSSION

A. *Mikels's Contentions*

1. *Theft by False Pretenses*

Mikels contends one of the counts of grand theft, which pertained to the theft of lumber from Empire Lumber Company, should be reversed because Empire retained a security interest in the lumber. He claims the conviction should be reversed because the crime he committed was theft on a theory of larceny by trick, rather than theft by false pretenses. Mikels contends that since the victim retained a security interest, it could not have been intended that he acquire full and complete title, rather than mere possession, of the lumber. Mikels bases this argument in part upon his misinterpretation of language taken out of context from a recent decision by Division Three of this district, *People* v. *Curtin* (1994) 22 Cal.App.4th 528 [27 Cal.Rptr.2d 369] (*Curtin*).

We reject this contention. A thief may be convicted of theft by false pretenses, even though a security interest is retained in the stolen goods by

---

[1]All subsequent statutory references are to the Penal Code.

the true owner. Our research shows that for at least the past 100 years, our Supreme Court and the Courts of Appeal have rejected similar claims that a retained security interest prevents the passage of title so as to convert a theft by means of false pretenses to theft on a theory of larceny by trick. Nothing in *Curtin*, *supra*, alters this rule.

In the oldest case in which we can find a similar claim was made, *People v. Martin* (1894) 102 Cal. 558, 559, 565 [36 P. 952], the defendant contended she was guilty of larceny by trick, not false pretenses as the jury found, because the mortgage and other property in question were assigned to her in trust, secured by a written contract to support the victim for life, so the defendant did not obtain the full title to it, only possession. The high court rejected this claim: "Looking at this question in its most favorable light for the accused, it is at least apparent that the title to this property by the assignment thereof passed to her in trust." (*Id.* at p. 565.) Thus, even if the title acquired by the thief was subject to the provisions of another written trust agreement in favor of the victim, the property could still be the subject of false pretenses.

In another Victorian case, *People v. Bryant* (1898) 119 Cal. 595, 597-598 [51 P. 960] (*Bryant*), our high court reviewed the case law and held a charge of theft by false pretenses was proper where a cheat obtained the victim's money, and title thereto, by granting her a mortgage and security interest in land, the value of which land was misrepresented. It was no defense to say that the victim might potentially recover her loss by foreclosing on the security interest she held: "If a person is induced to part with his property by reason of fraudulent pretenses and misrepresentations, he is thereby defrauded of the property so parted with even though he may eventually make himself whole in some mode not then contemplated. It is not necessary to show that the property has been absolutely lost to [the victim] in order to sustain the charge. He is defrauded of his property when he is induced to part with it by reason of the false and fraudulent pretenses and representations, and the offense is complete when by means of such false pretenses the fraud thereby intended is consummated by obtaining possession of the property sought." (*Id.* at p. 597.) The high court also quoted with approval from an older case, which had held as follows: " 'The allegation that the property was fraudulently obtained shows that the crime was consummated, and payment of the note [given as security therefor] after this would not blot out the offense or atone for its commission.' " (*Id.* at p. 598.) Thus, one who obtains property or money by false pretenses is guilty of that crime, even though the victim of the fraud retains a security interest which might potentially allow recovery of the lost money or property.

The high court relied upon *Bryant*, *supra*, and resolved a conflict in the case law to hold that one is guilty of theft by false pretenses, even though the

victims still had an interest in the stolen property by virtue of being partners with the thief, in *People* v. *Jones* (1950) 36 Cal.2d 373, 381-383 [224 P.2d 353] (*Jones*): "A complete loss of property need not be shown to support a charge of obtaining money under false pretenses. ([*Bryant, supra,*] 119 Cal. 595, 597 . . . .) Defendant, having perpetrated a fraud through the device of a partnership, cannot escape criminal liability by reason of that same device upon the theory that the defrauded parties, by becoming members of the partnership to which they contributed their money pursuant to his representations, retained such an interest in that fund as to preclude defendant's conviction . . . ." Thus, *Jones* interpreted *Bryant* as allowing conviction for false pretenses, even though the victim retains an interest and a species of shared title in the stolen property.

The succeeding year, in *People* v. *Nor Woods* (1951) 37 Cal.2d 584, 585-586 [233 P.2d 897] (*Nor Woods*), the question was whether the defendant could be guilty of larceny by trick or false pretenses in connection with the theft of a car; the car was the subject of a security interest and lien held by a bank; and therefore, under Mikels's theory, the thief could not have been convicted of false pretenses. Justice Traynor rejected the claim that the theft conviction must be reversed: "[T]here was no error in failing to instruct the jury that they must agree upon the method by which the theft was committed. If [the victim] intended that only possession of the property should pass at the time of the sale, defendant was guilty of larceny by trick or device, but if [the victim] intended that title should pass, defendant was guilty of obtaining property by false pretenses. [Citations.] Irrespective of [the victim's] intent, however, defendant could be found guilty of theft by one means or another, and since by the verdict the jury determined that he did fraudulently appropriate the property, it is immaterial whether or not they agreed as to the technical pigeonhole into which the theft fell. [Citations.]" (*Id.* at p. 586.)

These principles were invoked by the Second District in *People* v. *Aiken* (1963) 222 Cal.App.2d 45, 49 [34 Cal.Rptr. 828] (*Aiken*), which held the defendant was guilty of theft of a car by false pretenses, even though the title which passed by fraud to the thief was not perfect, and was subject to a security interest retained by the victim: "Our attention has not been called to any authority requiring that in order to support a conviction for theft by false pretenses the title acquired by the fraud be perfect or complete." As the Second District also observed, the law as stated in *Jones, supra,* is in accord with that of other states: "Other jurisdictions have found no difficulty in deciding that theft by false pretenses has been committed where the thief took property under a conditional sales contract and the victim retained a legal title to secure the unpaid balance of the purchase price. [Citations.]" (*Aiken, supra,* 222 Cal.App.2d at p. 49.)

Under these cases, Mikels was properly convicted of grand theft based upon false pretenses in connection with the Empire Lumber transaction, even though Empire retained a security interest in the lumber. Despite that security interest, obviously the victim intended Mikels to obtain, and he did obtain, sufficient title under California law to support a conviction for false pretenses.

We are not cited to, and our own research has not discovered, any published California case which actually holds it is impossible to steal property by false pretenses when the property is also encumbered with a security interest. Mikels relies in part upon ambiguous dicta from a decision by the Fourth District, Division One, which has been ordered not to be published in the Official Reports. Obviously, the cited case is not persuasive authority.

Further, there are compelling policy considerations in favor of the rule enunciated by our Supreme Court and the Second District. It obviously would be irrational to hold that any item which is being bought on time and is the subject of a security interest is fair game for thieves who use false pretenses.

Moreover, Mikels's reliance upon the decision of Division Three in *Curtin, supra,* 22 Cal.App.4th at pages 531-532 is also misplaced. *Curtin* concerned a situation contrapositive to this one; there, the defendant contended his conviction for theft on a theory of larceny by trick should be reversed because he *had* obtained title to the money, and his crime was in fact theft by false pretenses. While Mikels draws our attention to the *Curtin* court's perhaps technical holding on this point, even if *Curtin* were correct, this would not aid him; Mikels is forced to argue illogically that a theft conviction must be reversed where the evidence in fact showed theft, which is not the proper interpretation of *Curtin*. *Curtin* reversed a theft conviction because the instruction as to larceny by trick required the presence of evidence which did not exist in the record, and there was insufficient evidence of corroboration to sustain the conviction on a theory of false pretenses. (*Ibid.*) Corroboration was abundant in the present case, and Mikels does not argue to the contrary; it is also obvious from the record that he intended to permanently deprive the victims of their property through an unlawful taking.

Mikels also contends, again citing *Curtin, supra,* that reversal of a theft conviction is always required if the defendant is found guilty of theft on the wrong theory. However, Mikels reads much too broadly, and out of its true precedential context, the *Curtin* dictum that "the offense shown by the

evidence must be one on which the jury was instructed and thus could have reached its verdict." (22 Cal.App.4th at p. 531.) In both this case and in *Curtin*, the jury was instructed on the offense of theft. We interpret the *Curtin* dictum as meaning that there may be a technical error when the particular theory of theft upon which the jury is instructed turns out to be the wrong one. However, neither *Curtin* nor any decision cited therein actually holds there is a rule of per se reversal in such circumstances.

Moreover, the only California authority on this point, not cited in *Curtin*, squarely holds such an error is harmless. In *People v. North* (1982) 131 Cal.App.3d 112, 117-118 [182 Cal.Rptr. 126] (*North*), Presiding Justice Roth so held, rejecting the defendant's contention that his conviction for theft regarding the writing of worthless checks should be reversed, because the jury was instructed on the wrong theory of theft.

The defendant's contention in *North* was stated as follows: "Because there was a transfer of both possession and title in the proceeds of the cashed checks, the court erred in instructing the jury on larceny by trick or device while refusing to instruct on obtaining property by false pretenses." (131 Cal.App.3d at p. 116.)

Presiding Justice Roth aptly rejected the defendant's contention that he was entitled to reversal on those facts: "[Defendant's] final contention has the complexion of merit but does not withstand analysis. Over his objection, the jury was instructed on larceny by trick or device even though obtaining property by false pretenses is a more accurate description of the crime committed. [¶] The necessity of corroboration distinguishes false pretenses from trick and device and adds to the burden of proof the People must carry. Corroboration was present at bench . . . . In *People v. Kagan* (1968) 264 Cal.App.2d 648 . . . , (pet. for hg. and rehg. den.) the jury was instructed on larceny by trick and device, embezzlement and false pretenses. The court, discussing the distinction between said types of theft said at page 658: 'As to the California theft statute (§ 484), however, the cases all hold that a judgment of conviction must be affirmed if there is sufficient evidence to support a theft conviction on *any* theory. [Citations.] As stated in [*People v.*] *Ashley* [(1954) 42 Cal.2d 246, 258 (267 P.2d 271)], "Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved." ' " (*North, supra,* 131 Cal.App.3d at pp. 117-118.) Our Supreme Court denied a petition for hearing in *North*, although Chief Justice Bird voted to grant the petition. (*Id.* at p. 118.)

We agree with *North*, despite the potential tension between the *North* holding and certain dicta in *Curtin*. Further, here the argument for harmless

error is even stronger than in *North*. In the present case, even under appellant's theory, the error caused the People to carry the unnecessary burden of proving corroboration in order to establish false pretenses. It is impossible to understand how an error which increased the People's evidentiary burden could have prejudiced appellant.

Nor is Mikels aided by another ambiguous dictum cited by the *Curtin* court, which is contained in the opinion of one justice pro tem, not concurred in by the other two justices, in *People* v. *Smith* (1984) 155 Cal.App.3d 1103, 1145 [203 Cal.Rptr. 196]. The actual holding in that case was evidently to the contrary. (See *id.* at p. 1188.) We also note that in *Curtin, supra,* it ultimately made no difference to the defendant whether the theft conviction was reversed; the operative sentence imposed upon him had been for burglary, not theft, so reversal of the theft conviction had no practical effect on his sentence. (22 Cal.App.4th at p. 530.) Before the *Curtin* decision, Mr. Curtin had a two-year term for burglary and a stayed two-year term under section 654; after the *Curtin* decision this was still true. (22 Cal.App.4th at p. 530.) The *Curtin* dicta, thus, is of doubtful validity in light of the case law which the *Curtin* court did not cite.

■ In California, the ancient common law distinctions between the theories of larceny by trick and theft by false pretenses no longer exist by statute; under section 484, there is simply one consolidated crime of theft, which the jury may find upon either theory, if there is an "unlawful[ taking]" (§ 952). As stated by our Supreme Court in *People* v. *Ashley* (1954) 42 Cal.2d 246, 258 [267 P.2d 271], "The purpose of the consolidation was to remove the technicalities that existed in the pleading and proof of these crimes at common law. . . . Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved. [Citations.]" We note that another recent larceny case from the same court which decided *Curtin, supra,* supports our analysis: "In the instant action it was irrelevant whether defendant obtained the dress by trick or intimidation of the store employees. The end result was that he left the store with property he had not paid for." (*People* v. *McLemore* (1994) 27 Cal.App.4th 601, 606 [32 Cal.Rptr.2d 687].)

■ It would obviously be very hard to explain why a theft conviction should be reversed on the grounds that the evidence showed the defendant was indeed guilty of theft, but would have been guilty of a differently denominated type of theft under a common law system which has been repealed by statute. In the words of Justice Traynor, "it is immaterial whether or not [the jurors] agreed as to the technical pigeonhole into which

the theft fell." (*Nor Woods, supra,* 37 Cal.2d at p. 586.) To the extent we assumed arguendo there would be some technical common law pleading flaw in charging false pretenses where complete title had not in fact passed, it would appear to be, at most, harmless error here. (See *People* v. *Cahill* (1993) 5 Cal.4th 478, 487-492, 508-509 [20 Cal.Rptr.2d 582, 853 P.2d 1037]; *North, supra,* 131 Cal.App.3d at p. 118.)

2., 3.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

B.   *Counts's Contentions**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

III.  DISPOSITION

The judgment of conviction is affirmed.

King, J., and Phelan, J.,† concurred.

A petition for a rehearing was denied February 15, 1995.

---

*See footnote, *ante,* page 785.

†Associate Justice of the Court of Appeal, First District, Division Two, sitting under assignment by the Chairperson of the Judicial Council.