Filed 8/31/15  P. v. Saad CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B254937 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA416658) |
| v. | |
| DEBRO O. SAAD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Craig J. Mitchell, Judge.  Affirmed.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie C. Brenan and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant Debro O. Saad guilty of two counts of grand theft, arising out of Saad's fraudulent receipt of disability benefits. On appeal, Saad argues the convictions must be reversed because the trial court improperly instructed the jury on theft by larceny, rather than on a theory of theft by false pretenses. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003 and 2004, Saad was receiving social security insurance (SSI) benefits, and in-home support services, facilitated by the Los Angeles County In-Home Support Services Program (IHSS). Through IHSS, disabled or ill individuals (clients) may receive in-home services that enable them to continue living in their homes rather than moving to a nursing home or similar facility. IHSS determines how many hours of assistance a client needs from a "provider." IHSS then pays providers in one of two ways. A provider may submit a timesheet to IHSS after performing the work, to be paid directly by IHSS. The client and provider may also participate in an "advanced pay" system. With advanced pay, IHSS advances the provider's pay to the client by check or direct deposit. The client is to use the money to pay the provider directly. The client and provider then complete and sign a timesheet that is submitted to IHSS.

In September 2003, Saad applied to participate in the advanced pay system. At trial, the People offered copies of timesheets Saad submitted for services provided by Connie Guzman in 2003 and 2004. There was additional evidence that Guzman was identified as providing services to Saad between 2004 and 2006.

According to Guzman, in around 2003, she attended a technical school course with Saad's daughter. Guzman and Saad's daughter interacted socially. At some point during the eight-week course, Guzman's wallet was stolen. Her driver's license and social security card were in the wallet. At the time, Guzman knew nothing about IHSS. She never signed up to be a provider for Saad, did not give anyone permission to use her social security number or other identifying information, and never received any payment from IHSS for services. She did not write her name on or sign the timesheets Saad submitted to IHSS. Years after the technical course, Guzman received a letter from the

2

IRS indicating she owed around $10,000 in unpaid taxes. She received a similar letter one year later. After investigating, Guzman discovered a company she had never worked for had reported paying her. Guzman filed a police report.

The police report made it into the hands of Saad's social worker at IHSS. The social worker told Saad that Guzman claimed she had never worked for Saad; Saad said Guzman had in fact worked for her at one point. In 2006, the social worker sent Saad a letter asking that she provide evidence of who had provided services to her in April 2006. The social worker never received any documentation. She then issued a fraud referral. A California Department of Health Care Services investigator determined Saad had received a total of $56,861.67 for services she claimed Guzman had provided. The Social Security Administration (SSA) also investigated Saad. An individual receiving social security insurance benefits must report all additional income to the SSA. Additional income may reduce the social security insurance benefits. Despite receiving payments from IHSS for the services she claimed Guzman provided, Saad did not report the payments to the SSA. The SSA determined Saad's failure to disclose income led to an overpayment of $14,314.

At trial, Saad offered the testimony of Mechaka Gardner, Saad's daughter's former girlfriend. Gardner testified she met Guzman through Saad's daughter. Gardner claimed she was present when Saad asked Guzman to be her caretaker. Gardner testified she heard Guzman agree and she also heard Guzman provide Saad the identifying information necessary for IHSS to pay Guzman as a care provider. Gardner indicated she saw Guzman provide in-home support services to Saad.

The jury found Saad guilty of two counts of grand theft (Pen. Code, § 487, subd. (a).) The trial court suspended imposition of sentence on both counts and placed appellant on probation for a three-year period, on condition that she serve 68 days in county jail. The court granted Saad 68 days of custody credit. Saad's appeal timely followed.

## DISCUSSION

On appeal, Saad contends the trial court erred in instructing the jury on larceny rather than sua sponte instructing on theft by false pretenses. Saad asserts that in the absence of evidence of a trespassory taking required to establish larceny, the failure to require the jury to determine if the elements of theft by false pretenses were established beyond a reasonable doubt was a prejudicial error requiring reversal. The People concede the jury was erroneously instructed on theft by larceny. However, the People argue the error was harmless because the evidence satisfied the requirements of theft by trick on count 1, and theft by false pretenses on count 2. The People contend the instruction on the wrong theory of theft was a technical one, and the convictions may be upheld so long as there was sufficient evidence under any theory of theft. Under the circumstances of this case we agree the error was harmless, under any standard.

## I.      Section 484 and Theories of Theft

Under section 487, "[g]rand theft is theft committed . . . [¶] (a) When the money, labor, or real or personal property taken is of a value exceeding nine hundred fifty dollars ($950) . . . ." Section 484, subdivision (a) defines "theft" as follows: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. . . ."

In 1927, the Legislature consolidated what had previously been three separate theft offenses of larceny, false pretenses, and embezzlement. As our high court has explained, " '[t]he purpose of the consolidation was to remove the technicalities that existed in the pleading and proof of these crimes at common law. Indictments and informations charging the crime of "theft" can now simply allege an "unlawful taking." [Citations.]

4

Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an "unlawful taking" has been proved  [Citations.].  The elements of the several types of theft included within section 484 have not been changed, however, and a judgment of conviction of theft, based on a general verdict of guilty, can be sustained only if the evidence discloses the elements of one of the consolidated offenses.' [Citations.]"  (*People v. Williams* (2013) 57 Cal.4th 776, 785-786 (*Williams*), citing *People v. Ashley* (1954) 42 Cal.2d 246, 258.)

Three theories of theft are relevant in this case: theft by larceny, theft by trick, and theft by false pretenses.  Larceny is committed by a " 'person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away. . . . .  [Citation.]' "  (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 636 (*Fenderson*).)

"The crime of theft by trick or device requires: (1) obtaining possession of property of another by some trick or device; (2) intent by the wrongdoer to convert it to his own use and to permanently deprive the owner thereof; and (3) transfer of possession but not title to the wrongdoer."  (*People v. Frederick* (2006) 142 Cal.App.4th 400, 417.)

Theft by false pretenses requires that " '(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation.' [Citation.]"  (*Williams, supra,* 57 Cal.4th at p. 787.)

Theft by false pretenses and theft by trick are similar, but theft by false pretenses involves a consensual transfer of possession *and* title.  (*Williams,* at p. 787.)  In addition, to prove theft by false pretenses, there is a corroboration requirement:  "[T]he defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating

circumstances." (Pen. Code, § 532; *People v. Gentry* (1991) 234 Cal.App.3d 131, 138-139.)

In *Williams,* our Supreme Court described the differences between larceny and theft by false pretenses. Larceny requires asportation; theft by false pretenses does not. (*Williams, supra,* 57 Cal.4th at p. 787.) In addition, "larceny requires a 'trespassory taking,' which is a taking without the property owner's consent. . . . By contrast, theft by false pretenses involves the *consensual* transfer of possession as well as *title* of property; therefore it cannot be committed by trespass." (*Id.* at p. 788.) "Moreover, unlike the offense of larceny by trick, in which a defendant's fraud vitiates the consent of the victim as a matter of law, the acquisition of title involved in the crime of theft by false pretenses precludes a trespass from occurring." (*Id.* at pp. 788-789.)

At trial, the prosecution did not identify any particular theory of theft by name. The trial court, without objection from either side, instructed the jury with a modified version of CALCRIM No. 1800: "The defendant is charged in counts 1 and 2 with grand theft. To prove that the defendant is guilty of this crime, the People must prove, that, one, the defendant took possession of property owned by someone else, two, the defendant took the property without owner or owner's agent's consent, three, when the defendant took the property, she intended to deprive the owner of it permanently, and four, the defendant kept it for any period of time, however brief. . . . Money, for purposes of this instruction, constitutes property." The court did not instruct on any other theory of theft.[1]

---

[1] CALCRIM No. 1804 provides, in relevant part: "To prove that defendant is guilty of [theft by false pretense], the People must prove that: "1) The defendant knowingly and intentionally deceived a property owner . . . by false or fraudulent representation or pretense; 2) The defendant did so intending to persuade the owner . . . to let the defendant . . . take possession and ownership of the property; and 3) The owner . . . let the defendant . . . take possession and ownership of the property because the owner . . . relied on the representation or pretense. You may not find the defendant guilty of this crime unless the People have proved that: [A. The false pretense was accompanied by either a false writing or false token(;/.)] [OR] [(A/B). There was a note or memorandum of the pretense signed or handwritten by the defendant(;/.)] [OR] [(A/B/C).

## II. The Instructional Error Was Harmless

### A. Error in Instructing on Larceny

As noted above, the People concede the trial court erred in instructing the jury on larceny as the sole theory of theft. We agree this was error because the evidence did not establish a nonconsensual, or trespassory, taking. Instead, the evidence was overwhelming that Saad engaged in an "unlawful taking," but her actions involved "criminal acquisitive techniques" better described as theft by trick (count 1) and theft by false pretenses (count 2).[2] (*Williams, supra,* 57 Cal.4th at p. 795.)

---

Testimony from two witnesses or testimony from a single witness along with other evidence supports the conclusion that the defendant made the pretense.] . . . . A false pretense is any act, word, symbol, or token the purpose of which is to deceive. Someone makes a false pretense if, intending to deceive, he or she does one or more of the following: 1) Gives information he or she knows is false; or . . . 3) does not give information when he or she has an obligation to do so. . . . An owner . . . relies on false pretense, if the falsehood is an important part of the reason the owner . . . decides to give up the property. The false pretense must be an important factor, but it does not have to be the only factor the owner . . . considers in making the decision."

CALCRIM No. 1805 provides, in relevant part: "To prove the defendant is guilty of [theft by trick], the People must prove that: 1) The defendant obtained property that (he/she) knew was owned by someone else; 2) The property owner . . . consented to the defendant's possession of the property because the defendant used fraud or deceit; 3) When the defendant obtained the property, (he/she) intended to deprive the owner of it permanently . . . ; 4) The defendant kept the property for any length of time; and 5) The owner . . . did not intend to transfer ownership of the property. Obtaining the owner's . . . consent to use the property for a specified purpose while intending to use it in a different way constitutes fraud or deceit."

[2] " ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) "[A] claim that a court failed to properly instruct on the applicable principles of law is reviewed de novo. [Citation.]" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

The evidence showed Saad engaged in the fraudulent act of falsifying timesheets for Guzman when Guzman was providing no services to her. Saad then received payments from IHSS which she kept for herself, rather than transferring the funds to Guzman as was intended by the advanced pay program.

As explained in *People v. Traster* (2003) 111 Cal.App.4th 1377 (*Traster*), " 'It is generally held that where the victim hands money to the wrongdoer with the understanding that the latter is to spend it only for a particular purpose (thus creating an agency or trust, it would seem) title does not pass to the wrongdoer; he has only a power to pass title by spending it for the specified purpose. Thus where the victim hands money to the wrongdoer to be invested on the stock market, or to purchase specified property, or to bribe a particular official, and the wrongdoer, instead of thus dealing with the money, absconds with it, the crime is larceny by trick rather than false pretenses, the wrongdoer never having acquired title.' " (*Traster*, at p. 1388, fn. omitted.) Put differently in the same case: " 'It is essential in such cases [larceny by trick] that the owner shall intend to part with the possession only, and not to pass the title as well. If he intends to pass both the possession and the title, the transaction, though it may amount to the crime of obtaining property by false pretenses, will not constitute larceny. But the owner does not part with the title to the alleged thief where the thing which is the subject of the theft is delivered by the owner to the accused to be applied by the latter to a particular purpose, and the recipient of the property, having obtained the possession fraudulently with the preconceived intention to appropriate the property to his own use, does subsequently convert it to his own use instead of applying it to the purpose contemplated by the owner . . . .' " (*Ibid,* fn. omitted.)

IHSS gave Saad money for a specified purpose and, instead of using the money for that purpose, Saad converted it to her own use. This describes larceny by trick. We agree with both parties, however, that the evidence relating to count 2 established theft by false pretenses. Deceived by Saad's false pretense in the form of her failure to report the IHSS income when she was obliged to do so, the SSA intended to both part with possession of the SSI benefits *and* to pass title to the money to Saad.

## B. The Error Was Harmless

Thus, the critical issue is whether the error in instructing the jury only on larceny is a reversible error.  Guided by several cases considering this issue, we find the error to be harmless, under any standard.

For example, in *People v. Counts* (1995) 31 Cal.App.4th 785 (*Counts*), the defendant was convicted of theft by false pretenses.  The defendant argued the evidence established only larceny by trick because he did not acquire full title to the property.  The court rejected this argument, concluding that not only was the evidence sufficient to show the defendant acquired title sufficient to establish theft by false pretenses, any error in a conviction for larceny by trick was harmless error.  The court reasoned, in part, that common law distinctions between the theories of larceny by trick and theft by false pretenses no longer exist by statute.  Instead there is one consolidated crime of theft which the jury may find if there is an unlawful taking.  (*Id.* at p. 793.)  The court commented: "It would obviously be very hard to explain why a theft conviction should be reversed on the grounds that the evidence showed the defendant was indeed guilty of theft, but would have been guilty of a differently denominated type of theft under a common law system which has been repealed by statute.  In the words of Justice Traynor, 'it is immaterial whether or not [the jurors] agreed as to the technical pigeonhole into which the theft fell.'  [Citation.]  To the extent we assumed arguendo there would be some technical common law pleading flaw in charging false pretenses where complete title had not in fact passed, it would appear to be, at most, harmless error here."  (*Id.* at pp. 793-794.)  Courts reached similar results in *People v. Traster*, *supra,* 111 Cal.App.4th 1377 [jury instructed on theft by false pretenses instead of larceny by trick], *People v. Frederick, supra,* 142 Cal.App.4th 400, 417-418 [jury instructed on theft by false pretenses rather than theft by trick], and *People v. Fenderson, supra,* 188 Cal.App.4th 625 [jury instructed on larceny instead of embezzlement].

*People v. North* (1982) 131 Cal.App.3d 112 (*North*), is also instructive.  In *North,* the jury was instructed, over a defense objection, on larceny by trick or device when theft by false pretenses was a better description of the crime.  The court acknowledged the

9

corroboration requirement distinguishes false pretenses from theft by trick and increases the People's burden of proof. (*Id.* at pp. 117-118.) However, the court noted the evidence of the false pretense was corroborated. The court then quoted an earlier case as support for an affirmance of the judgment despite the instructional error: " 'As to the California theft statute (§ 484), however, the cases all hold that a judgment of conviction must be affirmed if there is sufficient evidence to support a theft conviction on *any* theory. [Citations.] As stated in *Ashley, supra*, "Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved." ' " (*North,* at p. 118.) The court affirmed the judgment.

We find the reasoning of the *North* court persuasive. It is clear the jury concluded Saad engaged in an unlawful taking of IHSS funds and social security benefits. On count 1, the instruction that the People had to prove Saad took property without the owner's consent was not entirely inconsistent with larceny by trick since, as a matter of law, the defendant's fraud "vitiates the consent of the victim." (*Williams, supra,* 57 Cal.4th at pp. 788-789.) Further, while proving theft by false pretenses requires corroboration and a showing that the victim relied on the fraud, both of these aspects were overwhelmingly satisfied at trial.[3] Saad's false pretense was conducted almost exclusively in writing, by means of the false timesheets she submitted to IHSS. Additional corroboration came from testimony of the state and SSA investigators who described the paper trail documenting Saad's scheme, and the testimony of Guzman, who confirmed she had not provided services to Saad or received any payment for providing services.

The only contested issue at trial was whether Saad engaged in fraud against IHSS. This was the essence of the case, and the basis for the unlawful taking. The jury's guilty findings conclusively rejected the defense evidence attempting to establish Guzman had, in fact, provided services to Saad. The jury's decision indicated it believed Saad falsified

---

[3]     We note the victims' reliance on Saad's misrepresentations was not contested at trial.

10

the timesheets. In addition, the evidence was undisputed that, irrespective of whether the funds IHSS deposited into Saad's bank account were ill-gotten, Saad had an obligation to report such funds to the SSA, and she failed to do so. Under these circumstances, the trial court failure to instruct the jury on theories of theft by trick and theft by false pretenses was harmless, under any standard. (*People v. Frederick, supra,* 142 Cal.App.4th at pp. 417-418 [finding instructional error on theory of theft harmless beyond a reasonable doubt].)

We acknowledge that in *People v. Curtin* (1994) 22 Cal.App.4th 528 (*Curtin*), the court found a failure to instruct on theft by false pretenses was reversible error. However, the court in *Counts* offered a persuasive, limited interpretation of *Curtin.* The *Counts* court noted that in both *Curtin* and *Counts*, the jury was instructed on the offense of theft, the crucial element of which is an unlawful taking. As the *Counts* court explained, *Curtin* may be read as concluding there is "a technical error when the particular theory of theft upon which the jury is instructed turns out to be the wrong one. However, neither *Curtin* nor any decision cited therein actually holds there is a rule of per se reversal in such circumstances." (*Counts*, *supra,* 31 Cal.App.4th at p. 792.)

Similarly, in *People v. Beaver* (2010) 186 Cal.App.4th 107 (*Beaver*), the appellate court, relying on *Counts*, reversed a jury's conviction for theft. The trial court instructed only on the elements of larceny, rather than theft by false pretenses, which was established by the evidence. The appellate court found the error prejudicial and rejected the argument that the failure to instruct on false pretenses made no difference to the outcome of the case. (*Beaver,* at p. 125.) The court based its reasoning at least in part on the fact that the primary witnesses against the defendant were his two accomplices, both of whom received immunity in exchange for their testimony against him; a third witness came forward only two years after the crime occurred and her testimony was equivocal.[4] (*Id.* at p. 125.)

---

[4] In *Williams,* our high court discussed *Beaver* when considering the issue of whether the felonious taking required to establish robbery under Penal Code section 211

11

Yet, in *Fenderson, supra,* the court followed *Counts* rather than *Beaver*, concluding not only that an error that increased the People's evidentiary burden could not have prejudiced appellant, but also that it would " 'be very hard to explain why a theft conviction should be reversed on the grounds that the evidence showed the defendant was indeed guilty of theft, but would have been guilty of a differently denominated type of theft under a common law system which has been repealed by statute.' [Citation.]" (*Fenderson, supra*, 188 Cal.App.4th at pp. 641-642.)

Here, the jury's convictions on a larceny theory necessarily indicate it credited the People's evidence and still would have found Saad guilty had the trial court instructed on theft by trick or theft by false pretense theories. Further, the evidence of the victims' reliance on Saad's misrepresentations was overwhelming, and there was ample corroboration. In contrast to *Beaver*, here the evidence against Saad was not equivocal or inherently suspect. Under the facts of this case and the manner in which the thefts were committed, there was no way for a rational jury to find Saad guilty of violating Penal Code section 487 without also finding the facts necessary to establish the elements of theft by trick or theft by false pretenses. (See *People v. Sanders* (1998) 67 Cal.App.4th 1403, 1413-1414 [when the trial court's instructions fail to advise jury of the elements of a charged offense, the judgment may be upheld only if no rational jury could find the predicate acts but fail to find the fact presumed].) We agree with *North* that, under these circumstances, trial court error in failing to instruct on a more appropriate theory of theft does not require reversal of the judgment.

---

may be satisfied with a theft by false pretenses. The *Williams* court ultimately concluded theft by false pretenses does not satisfy the felonious taking element of robbery because it does not involve a trespassory, nonconsensual taking, as explained in *Beaver*. (*Williams,* at pp. 788-789.) However, the *Williams* court had no need to consider the issue here: whether an error in instructing the jury on a particular theory of theft is reversible error.

**DISPOSITION**

The trial court judgment is affirmed.

BIGELOW, P.J.

We concur:

FLIER, J.

GRIMES, J.