Filed 3/19/15  P. v. Thompson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C073755 |
| Plaintiff and Respondent, | (Super. Ct. No. SF120611A) |
| v. | |
| REGINALD THOMPSON, | |
| Defendant and Appellant. | |

Defendant Reginald Thompson committed theft from several individuals and a cemetery in connection with his mortuary business.  Convicted by jury of seven theft crimes and sentenced to six years eight months, he appeals.  He contends that the evidence was insufficient to support the conviction on two of the counts and that the trial court imposed an unauthorized sentence for one of the counts.  Only the last contention has merit, so we modify and affirm the judgment.

1

## BACKGROUND

This case arose because of defendant's dealings in the mortuary business.  Over the course of several years, defendant took clients' money not intending to provide the agreed-upon services, failed to refund an overpayment, or failed to place funds given to him on a "pre-need" basis into a trust account as required by law.  He also issued a check to a cemetery without sufficient funds to cover the check.

A jury convicted defendant of the following crimes:

Count 1:  theft from an elder (Pen. Code, § 368, subd. (d); Minnie Bethea);

Count 2:  theft from an elder (Pen. Code, § 368, subd. (d); Preston Campbell);

Count 3:  theft from an elder (Pen. Code, § 368, subd. (d); Willie Smith);

Count 4:  theft from an elder (Pen. Code, § 368, subd. (d); Clemmie Owens);

Count 5:  misdemeanor theft from an elder (Pen. Code, § 368, subd. (d); Janie Case);

Count 6:  grand theft (Pen. Code, § 368, subd. (d); Lodi Memorial Cemetery); and

Count 7:  misdemeanor petty theft (Pen. Code, § 484, subd. (a); Patricia Miller).

The facts underlying counts 4 and 7 are discussed later.

The trial court sentenced defendant to an aggregate term of six years eight months, with three years eight months to be served in county jail.

Additional details of sentencing are discussed later.

## DISCUSSION

### I

### *Sufficiency of Evidence*

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one.  ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  On appeal, we must view the

evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' [Citations.]" (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.) We must accept any reasonable inference the jury might have drawn from the evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

A. *Theft from an Elder (Count 4)*

Penal Code section 368, subdivision (d) proscribes theft from an elder – here, Clemmie Owens, who was 86 at the time of the theft. Defendant contends there was insufficient evidence to support the conviction in count 4 for theft from an elder because, although Owens was an elder, the evidence does not support a finding that there was a theft. The contention is without merit.

Penal Code section 484, subdivision (a), defines theft: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

A theft conviction will be upheld as long as there is sufficient evidence of any relevant theory of theft. (*People v. North* (1982) 131 Cal.App.3d 112, 117-118.)

1. Facts

In January 2012, Owens's daughter passed away, and defendant was called to provide mortuary services. Owens paid for the services. Shortly after that, in May 2012, Owens's husband passed away. Defendant also provided mortuary services for his

3

passing, paid for by Owens. Owens's niece, Crystal Williams, assisted with the arrangements.

At the time of her daughter's funeral, Owens paid defendant with a cashier's check. However, she accidentally overpaid defendant. Defendant noticed the overpayment before the daughter's funeral and told Owens and Williams about it. Williams spoke to defendant a day or two after the funeral, and defendant said he was going to get the overpayment back to Owens.

On the day that Owens's husband passed away, defendant went to the Owens home and gave Owens a check for $3,625.25 to refund the overpayment for the daughter's mortuary services. Against the advice of family members who were suspicious of defendant because he had not previously refunded the overpayment, Owens wanted defendant to provide the mortuary services. She trusted him. Defendant recommended that the amount of the check go toward mortuary services for Owens's husband, but Williams and Owens rejected that option. Owens paid separately, including an insurance policy, for the mortuary services for her husband.

Owens deposited the check from defendant in her bank account, but it was returned because there were insufficient funds in defendant's bank account. Williams had numerous discussions with defendant about the funds, asking him to pay or at least to make up a payment plan, but defendant said he was having financial problems.

Defendant testified that, after the funeral of Owens's daughter, Owens asked him to hold onto the overpayment because she had not made any decisions about her own and her husband's later burials. When Owens's husband passed away, he was called to the Owens's home and was asked to bring a check for the balance of the overpayment. He understood that Owens would cash the check. He testified that the check was returned for insufficient funds because he had paid expenses for the funeral of Owens's husband and he had not yet received the payment on the insurance policy, which was to pay, in part, for the services. He had asked Owens not to cash the check until he received the

4

money on the insurance policy. Defendant claimed that, when he eventually received payment on the policy, it was for about $2,900, rather than the $4,500 face value of the policy, because a loan had been taken out on the policy. Defendant admitted he never reimbursed Owens for overpayment on the daughter's mortuary services, but he claimed that he never intended to steal from Owens.

2. Analysis

The trial court instructed the jury on several theories of theft, including theft by embezzlement. Because the evidence concerning the theft from Owens was sufficient on an embezzlement theory, we need not discuss other possible theories.

According to the instruction, which defendant does not challenge as inaccurate, the People must prove that:

"1. An owner or the owner's agent entrusted his or her property to the defendant;

"2. The owner or owner's agent did so because he or she trusted the defendant;

"3. The defendant fraudulently converted or used that property for his own benefit;

"AND

"4. When the defendant converted the funds or used the property, he intended to deprive the owner of its use." (CALCRIM No. 1806.)

Defendant argues that there was insufficient evidence of embezzlement because (1) Owens did not entrust the money to him and (2) he had no intent to deprive Owens of the money. Neither argument is well taken.

While a mere creditor-debtor relationship is insufficient to establish the entrusting element of embezzlement, there need not be a fiduciary relationship. Instead, the element is satisfied if there is a relationship of trust and confidence. (*People v. Wooten* (1996) 44 Cal.App.4th 1834, 1845.) Here, Owens allowed defendant to retain the overpayment

5

temporarily because she trusted him. Therefore, it was more than a mere creditor-debtor relationship. Defendant violated Owens's trust.

Defendant argues that, because the money from Owens was not for a "pre-need" contract for mortuary services, the governing statutes did not require him to put the money in a trust. That argument, however, is beside the point. It was unnecessary for the prosecution to establish a fiduciary or trustor-trustee relationship to prove embezzlement.

Concerning intent to deprive Owens of the use of her money, defendant says that "there is no evidence that [he] had a specific intent to steal or any fraudulent intent at the time that Owens gave him the cashier's check as payment." Embezzlement, however, does not require intent to deprive at that time the money is obtained. In contrast to other theft offenses, for embezzlement the intent to deprive the owner of the use of the property need not exist at the time the property was entrusted to the perpetrator; rather, the intent must exist only as of the time of the misappropriation. (*People v. Green* (1980) 27 Cal.3d 1, 54, citing *People v. Smith* (1863) 23 Cal. 280 [if intent to steal is lacking at time of acquisition of property, offense is not larceny but may be embezzlement].)

In any event, the jury could have reasonably rejected defendant's self-serving testimony that he never intended to deprive Owens of the money. (*People v. Harbert* (2009) 170 Cal.App.4th 42, 58.)

B.      *Petty Theft (Count 7)*

In count 7, defendant was convicted of petty theft from Patricia Miller. Defendant contends the evidence was insufficient to support the conviction because: (1) the victim and defendant had no contractual relationship, (2) there is no evidence defendant intended to take the money by false pretenses when he agreed to provide services, and (3) the victim paid defendant after she already knew defendant had not delivered the agreed-upon casket. The contentions are without merit.

6

1. Facts

Rickey Cook passed away in May 2012. Cook's sister, Patricia Miller, contacted defendant to provide mortuary services. Ronnie Cook, a nephew of both Rickey Cook and Patricia Miller, entered into a contract with defendant for those services in the amount of $1,695. Defendant agreed to provide a "New Pointe oval" casket, which was valued at $665. The nephew paid a $300 deposit, and defendant was given a life insurance policy to cover the remaining balance.

On the day set for the graveside service, the family went to the cemetery, but the body was not there. Miller called defendant, who apologized for not being there and said that he had not received the money from the insurance policy, which was for the casket. Miller told defendant to bring the body and that they would pay him. The family was upset about the situation, and they proceeded with the graveside service without a body.

The family tried to reach defendant by telephone, but he did not respond until four days later. When Miller spoke to him, she was still upset because defendant still had the body. They agreed to meet at the cemetery the next day, that defendant would bring the body to be buried, and Miller would take back the insurance policy and pay defendant by check. As agreed, defendant delivered the body and the insurance policy to the cemetery the next day, and Miller gave defendant a check for $1,395, the amount remaining due on the contract.

The casket the defendant brought the body in, however, did not appear to be the casket in the agreement. Miller testified that it looked like a cardboard box with felt on it. Because some family members were getting angry, Miller told defendant to leave, which he did. Miller knew there had to be a difference in the value of the casket ordered and the casket provided, but she did not know what that difference was.

The value of the casket provided by defendant was $395, which was $270 less than the value of the agreed-upon casket.

7

Defendant testified that he did not provide the agreed-upon casket because he had not received payment and did not have money for the casket. Instead, he put the body in a "county cover," which is a simple casket covered with cloth. Defendant did not talk to the family at the cemetery about the casket discrepancy because he was told to leave.

2.     Analysis

The trial court instructed the jury on theft by false pretenses. Because the evidence concerning the theft from Owens was sufficient on a false pretenses theory, we need not discuss other possible theories.

According to the instruction, which defendant does not challenge as inaccurate, the People must prove that:

"1.     The defendant knowingly and intentionally deceived a property owner or the owner's agent by false or fraudulent representation or pretense;

"2.     The defendant did so intending to persuade the owner or the owner's agent to let the defendant or another person take possession and ownership of the property;

"AND

"3.     The owner or the owner's agent let the defendant or another person take possession and ownership of the property because the owner or the owner's agent relied on the representation or pretense." (CALCRIM No. 1804.)

a.     Contractual Relationship

Defendant provides no authority for his contention that he cannot be guilty of theft by false pretenses from Miller because there was no contractual relationship between Miller and defendant. The failure to cite authority forfeits the contention. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [failure to cite authority waives appellate review of issue].) In any event, we know of no such authority. If defendant took Miller's money by false pretenses, we see no need for a contractual relationship.

b.     Intent at the Time Contract Signed

Defendant argues that there is no evidence that he intended to take the money by false pretenses when he entered into the contract with Miller's nephew. We need not consider this argument because there was sufficient evidence that defendant intended to

9

take the money by false pretenses when he later took the check from Miller, as we discuss next.

### c. Victim's Knowledge

Defendant argues that there is insufficient evidence that he committed theft by false pretenses when he took the check from Miller at the cemetery. We disagree.

Defendant admits that he delivered a casket that was worth $270 less than the agreed-upon casket. Also, defendant accepted a check for the full agreed-upon amount. He claims, however, that doing so was not a false pretense or a misrepresentation because Miller knew "it was a different and cheaper casket when [defendant] delivered the body in the casket." While there can be no doubt that Miller knew it was a different casket, there is no evidence in the record that Miller knew it was worth $270 less than the agreed-upon casket. Therefore, defendant's substitution of the cheaper casket and his acceptance of the amount that included the more expensive casket was evidence from which the jury could infer that he misrepresented to Miller that he was giving her a casket worth the higher amount, $665. He did not tell Miller the delivered casket was worth less, and he did not offer to reduce the price that included the more expensive casket.

The only authority defendant cites for his argument that he did not take the money from Miller by false pretenses is *People v. Williams* (2013) 57 Cal.4th 776, at page 787, which does nothing more than recite the elements of theft by false pretenses.

We conclude that the evidence was sufficient that: (1) defendant knowingly and intentionally deceived Miller by false or fraudulent representation or pretense; (2) defendant did so intending to persuade Miller to give him the check for the full amount agreed on; and (3) Miller let defendant take the check because she relied on defendant's implication that he was giving her the full value agreed on. The evidence was therefore sufficient to sustain the conviction for theft by false pretenses in count 7.

10

II

*Sentence for Petty Theft*

Defendant contends, and the Attorney General agrees, that the trial court imposed an unauthorized sentence for count 7, misdemeanor petty theft. The maximum jail time for petty theft under Penal Code section 490 is six months. The trial court, however, imposed a concurrent one-year jail term. Since the sentence is unauthorized, we must correct it to six months. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

DISPOSITION

The term imposed for count 7 is modified to a concurrent six months. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to send it to the Department of Corrections and Rehabilitation.

      NICHOLSON     , Acting P. J.

We concur:

      BUTZ      , J.

      MURRAY     , J.